DAVIDSON COUNTY, Tennessee et al.

*v.*

J. H. HOOVER et ux.

364 S. W. 2d 879.

(*Nashville,* December Term, 1962.)

Opinion filed February 7, 1963.

HOOKER, HOOKER & WILLIS, ALFRED H. KNIGHT, III, WILLIAM R. WILLIS, JR., Nashville, for appellants.

SHELTON LUTON, County Attorney, Nashville, for appellees.

M<small>R</small>. J<small>USTICE</small> B<small>URNETT</small> delivered the opinion of the Court.

The question presented by this lawsuit is whether or not a beauty parlor is permitted under the Nashville Zoning Ordinance in a Residential "B" District.

After a complaint was made the County Zoning Inspector visited the premises of the Hoovers and found they were operating a beauty parlor in their home. The Hoovers at that time were notified that such an operation was not permitted. Applications were made and seasonably denied through various departments of the county having jurisdiction of such matters and finally the Davidson County Board of Zoning Appeals denied the Hoovers' application to conduct a beauty parlor in their home. When it was later discovered the Hoovers were

disregarding this ruling this present suit was brought by the county to enjoin this operation. A temporary injunction was granted and after a demurrer to the bill and the determination to rely upon the demurrer which merely raises a question of law, the Chancellor granted a permanent injunction. This appeal thus results.

The Hoovers were owners of a home and a tract of land located in a Residential "B" Zoning District. In one room of this home it was found that they had in full operation a beauty parlor containing "three chair hair dryers, one dresser shampoo unit, one shampoo chair, one sofa, one manicure table, and various other kinds of equipment and supplies used in connection with the operation of a beauty parlor." Mrs. Hoover is a trained and licensed cosmetologist within the meaning of the regulatory statutes (sec. 62-402 et seq., T.C.A.) of this State.

The contention of the Hoovers is that the Zoning Regulations do not apply because they come within the exceptions in the regulation defining Residential "B" Districts. Section 8 of the Zoning Regulations, Residential "B" Districts, and what they may and may not contain governs questions here presented. The use of the property in question of Residential "B" Districts under Section 5 of Estates "A" Districts provides:

"(11) The office of a member of a recognized profession, such as a doctor, dentist or musician, provided the office is in the home of such person and there is no display visible from the street, nor signboard used to advertise such use except an unlighted or indirectly lighted name plate not more than one (1) square foot in area. See Sec. 2—Home Occupation; Page 2)."

Section 2 is a section of definitions of the various terms used in Zoning Regulations. The definition of "Home Occupation" is, as follows:

"HOME OCCUPATION: Any occupation in connection with which there is kept no stock in trade nor commodity sold upon the premises, no person employed other than a member of the immediate family residing on the premises, and no mechanical equipment used except such as is permissible for purely domestic or household purposes; and in connection with which there is used no sign or display that will indicate from the exterior that the building is being utilized in whole or in part for any purpose other than that of a dwelling."

It is conceded that if a beauty parlor doesn't come within these exceptions then the Chancellor is correct in granting the injunction.

We have read some fifteen to twenty cases from various parts of the United States in reference to beauty parlors in residential districts and whether or not such violate the particular Zoning Ordinance in question. Some of these cases do permit the operation of a beauty parlor particularly under the "home occupation" provisions of the ordinance applicable thereto. In Pennsylvania there are at least a dozen reported cases on the question, the majority of which deny the use of Residential "B" Districts for beauty parlors while some two or three permit it. Suffice it to say though, that in reading these various cases, we find that they are determined by the particular facts and ordinances involved in each case.

In Yokley Zoning Law & Procedure, 2nd Ed., Vol. 2, 1962 Cum.Supp., sec. 218.1, the author says:

"It is apparent that under the current trend of the decisions, beauty shops are becoming subject to more stringent regulations. The trend is now to hold that a beauty shop does not constitute a 'home occupation'." Citing *Boreth v. Philadelphia Zoning Board of Adjustment,* 396 Pa. 82, 151 A.2d 474, 73 A.L.R.2d 436; *Long v. Fort Worth,* (Tex.Civ.App.), 333 S.W.2d 644.

The author continues thus:

"In a decision to the contrary, however, the Supreme Court of New Jersey in *Jantausch v. [Borough of], Verona,* [24] (N.J.) [326], 131 A.(2d) 881, held a beauty shop to be a 'home occupation'.

"Where an ordinance defines 'home occupation' in a manner to clearly imply that beauty shops constitute a permissible use, provided the restrictions in the ordinance are observed, an injunction against the use of property for a beauty shop will be denied." Citing *Vitale v. Dunnett,* Okl., 365 P.2d 122.

In reading this Oklahoma case it will be found that the case is decided upon the proposition that under the particular facts in that case a beauty shop is not a nuisance. That is really the determinative point in that lawsuit.

In the New Jersey case, *Jantausch v. Borough of Verona,* supra, the court there reached the conclusion that such a use was permissible under the "home occupation" provision because down through the ages women have been occupied in the home improving their personal appearance and the personal appearance of other women; that in doing so they have contributed to their own well being and to the well being of their many admirers of the opposite sex. This decision is followed by the trial court

of New York in the reported case of *Wise v. Michaelis,* Sup., 203 N.Y.S.2d 247. But in these particular cases the facts are somewhat different from those here and the definitions of "home occupation" are not identical.

In *City of Baton Rouge v. Allen,* a 1958 Louisiana case, as reported in 106 So.2d 740, a beauty shop was permitted under the "home occupation" exceptions, upon the reasoning that the equipment used by Mrs. Allen in her residence was such as could normally be used for domestic or household purposes, and that there was no mechanical equipment used except as normally used for domestic or household purposes. Clearly, from the factual situation above set forth herein this case does not apply here.

A rather comprehensive note on the question here involved will be found in 73 A.L.R.2d, beginning at page 446 and going through page 450. Suffice it to say that after reading these authorities there cited and others we have referred to and others that we have found, we must agree with the statement in Yokley, supra.

In the New Jersey case of *Jantausch v. Borough of Verona,* supra, a building inspector had originally granted a permit which had been revoked and then the trial court had held that the building inspector was correct in the first instance. The principal reasoning back of the New Jersey case is that in this Borough of Verona there were about ten beauty parlors or salons, four of which were admittedly located in residential areas, and this was one, and probably the controlling, feature back of the court's ruling therein that the primary use of the occupant was still residential and that the beauty parlor business was merely incidental thereto. We cannot agree that that is

true in the instant case. Then, too, the factual situation is entirely different.

It is very ably and forcefully argued that under the provision quoted above this Zoning Regulation does not apply to members of recognized professions, such as ''a doctor, dentist or musician,'' provided the office is in the home, etc., that here cosmetology is a profession and that under this language the profession of cosmetology, or beauty parlor operation, is permitted in this District. The words used in this Ordinance ''such as a'' have been used a number of times in decisions as will be found in Words & Phrases, Permanent Edition, Volume 40, and particularly in the Supplement thereto. All of these authorities come to the conclusion that ''such as'' is generally used as a phrase of similitude which is governed by things of like kind or of the same general character. It is true that the phrase ''such as'' is sometimes given a broad meaning of general similitude but in searching the authorities it was generally found that it is given a more restricted meaning of ''no other or different''. See Century Dictionary Encyclopedia.

In the Texas case of *Board of Adjustment of City of San Antonio v. Levinson,* Tex.Civ.App., 244 S.W.2d 281, 282 and 285, that court in considering such a phrase in a Zoning Regulation as here, which said ''such as the office of a physician, surgeon, dentist, musician, or artist'', held that this was limited and contracted by the broader term ''home occupation'' as used in their Zoning Ordinance permitting a D-Apartment District, and that such terms under the *ejusdem generis* rule of construction would limit its use to such people as are stated following, that is, physician, surgeon, etc., and that a one chair

beauty shop was not permissible thereunder. The Chief Justice of the Texas Court dissented largely on the proposition that the doctrine of *ejusdem generis* was not a rule of substantive law but was only a rule of construction and was not to be applied where the legislative intent was plain and unambiguous. The Chief Justice of the Texas Court, of course, is correct in this proposition, that is, that the doctrine of *ejusdem generis* is not a substantive rule of law but merely a rule of construction. That is the way it is being applied here by us. It seems clear to us that applying the term "such as" and using the doctrine of *ejusdem generis* merely as a means of determining what the Council of Nashville meant when they enacted this Ordinance, we can see no connection between the doctor, dentist, musician, and the cosmetologist. We think that clearly the Council intended to use this in the limited sense as above indicated.

■ Whether beauty shops *per se* are such that they cannot be engaged in on the premises without affecting the use of the premises as a residence is a legislative problem. This legislative act, that is the Zoning Ordinance which was passed by the city fathers of Nashville, does not *per se* permit beauty shops in this District, while the many many exceptions as permitted in Residential "A" Estate Districts which are likewise permitted in Residential "B" Districts, where this property is, do not cover beauty shops. Frankly, with the many things that are permitted in Residential "A" Estate Districts, we cannot see why the legislative body did not permit beauty shops. Be that as it may, this is not a question for the Court's determination but is a legislative problem, which must be left to the judgment of the local municipal legis-

lative body based on its knowledge of conditions peculiar to a locality.

After very carefully considering the excellent briefs and arguments herein, we must reach the conclusion that the Chancellor was correct in entering the injunction herein. His decree is thus affirmed.