# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 25, 2015

## NAJO EQUIPMENT LEASING, LLC V. COMMISSIONER OF REVENUE

**Appeal from the Chancery Court for Shelby County**
**No. CH102125     Arnold B. Goldin, Chancellor**

———————————————

**No. W2014-01096-COA-R3-CV – Filed April 23, 2015**

———————————————

Taxpayer brought action against the Tennessee Department of Revenue ("Department") to challenge its assessment of business taxes against taxpayer. Taxpayer asserted it was entitled to an exemption for its leasing trucks and trailers to a public utility. Taxpayer and the Department filed cross-motions for summary judgment. The trial court granted summary judgment in favor of the Department finding that the exemption provision was unambiguous and did not apply to the taxpayer's business activities. On appeal, we hold that the exemption provision is ambiguous, but also that the taxpayer failed to meet its burden in proving it was entitled to the exemption. Accordingly, we affirm the trial court's grant of summary judgment in favor of the Department.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which BRANDON O. GIBSON J., and KENNY ARMSTRONG, J., joined.

Gary E. Veazey and Martin A. Grusin, Memphis, Tennessee, for the appellant, NAJO Equipment Leasing, LLC.

Herbert H. Slatery, III, Attorney General and Reporter; Andree S. Blumstein, Solicitor General; Talmage M. Watts, Senior Counsel, for the appellee, Commissioner of Revenue.

# OPINION

## Background

The material facts concerning this appeal are undisputed and have been stipulated to by the parties, Appellant NAJO Equipment Leasing, LLC ("NAJO") and Appellee Commissioner of the Department of Revenue ("Department"). NAJO is a dual-member limited liability company formed under the laws of Tennessee and located in Shelby County, Tennessee. NAJO is the owner of trucks and trailers that it leases to another Tennessee corporation, JNJ Express. JNJ Express uses the trucks and trailers it leases from NAJO to provide transportation services in interstate commerce. It is undisputed that JNJ Express, a common carrier, is a public utility within the meaning of Tennessee Code Annotated Section 65-4-101(6) (2006).[1] Accordingly, the Department has recognized that JNJ Express is exempt from business taxes pursuant to Tennessee Code Annotated Section 67-4-708(3)(C)(ix).[2]

On May 15, 2010, the Department, pursuant to the powers provided in Title 67 of the Tennessee Code, assessed NAJO for business taxes for the period from April 2001 through March 1, 2009. The assessment was in the total amount of $27,618.93, including tax, penalty, and interest through May 15, 2010. The income of NAJO on which the Department's assessment of business taxes was based was derived solely from NAJO's leases of trucks and trailers to JNJ Express. On October 6, 2010, the Department adjusted the assessment to remove interest erroneously charged for the period from August 9, 2010, through September 21, 2010. The revised assessment was in the amount of $28,001.68, including tax, penalty, and interest through October 31, 2010.[3]

On November 22, 2010, NAJO commenced this action challenging the Department's assessment of business taxes for the period from April 1, 2005, through March 31, 2009. NAJO filed a timely challenge to the assessment pursuant to the authority of Tennessee Code

---

[1] Tennessee Code Annotated Section 65-4-101(6) provides that the meaning of "[p]ublic utility" includes common carriers.

[2] Tennessee Code Annotated Section 67-4-708(3)(C)(ix) provides an exemption for taxpayers classified as "public utilities."

[3] According to the parties' joint stipulations: "The assessment was made and notice thereof was given in accordance with Tennessee law. There is no disagreement as to the accuracy of the audit calculations, but NAJO maintains that it is exempt from Tennessee business taxes pursuant to the authority of the exemption from business taxes set forth in T.C.A. 67-4-708(3)(C)(xiii)."

Annotated Section 67-1-1801.[4] The Department filed a counterclaim seeking a judgment in the total amount of the assessment, plus later accruing interest, plus statutory expenses of litigation and attorney fees.

On January 30, 2014, both parties filed cross-motions for summary judgment. As mentioned above, the parties stipulated to the material facts for purposes of summary judgment. The Department argued in its motion that it properly assessed business taxes against NAJO pursuant to the Business Tax Act. The Department asserted that no exemption in the Business Tax Act applied to NAJO. NAJO argued that it was exempt from business taxes because it was a lessor of public utility property.

On April 4, 2014, the trial court heard the parties' cross-motions for summary judgment. After the hearing, the trial court ruled from the bench in favor of the Department. Noting that this was an issue of first impression with no guidance in the Business Tax Act's legislative history, the trial court entered its written Findings of Fact and Conclusions on Law on May 5, 2014. The trial court found that NAJO's leasing of trucks and trailers to JNJ Express constituted a "sale" within the meaning of the Business Tax Act and that the "exemption that NAJO claims is an exemption for revenues derived from services, not sales." After finding that the Department sufficiently proved it had the authority to tax NAJO and finding that NAJO failed to carry its burden in proving it was exempted, the trial court granted summary judgment in favor of the Department. Additionally, the trial court certified its order as final pursuant to Tennessee Rule of Civil Procedure 54.02. NAJO timely filed this appeal.[5]

**Issue**

NAJO presents one issue for appellate review, which we have restated: Whether the trial court erred in granting summary judgment in favor of the Department, finding that NAJO's gross receipts received from its lease of trucks and trailers to a common carrier are taxable under the Business Tax Act and are not exempt from being taxed under the exemption in Tennessee Code Annotated Section 67-4-708(3)(C)(xiii) created for "lessors of . . . public utility [properties]."

---

[4] Tennessee Code Annotated Section 67-1-1801 provides that one of the taxpayer's remedies for an allegedly "unjust, illegal or incorrect" assessment of taxes is to "file suit against the commissioner in chancery court in the appropriate county of this state, challenging all or any portion of the final assessment of such tax." Tenn. Code Ann. § 67-1-1801(a)(1)(B).

[5] On June 25, 2014, NAJO, under protest, paid the full amount of taxes assessed against it, in the amount of $33,074.60.

## Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 103 (Tenn. 2010).

When reviewing the evidence, we must determine whether factual disputes exist. If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners*, 2009 WL 3172134 at *3(citing *Byrd*, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id.* "Summary Judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Landry v. South Cumberland Amoco, et al.*, No. E2009-01354-COA-R3-CV, (Tenn. Ct. App. March 10, 2010) (citing *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995)).

The proper interpretation of a statute is an issue of law that may commonly be decided on summary judgment. We review the trial court's interpretation of a statute *de novo* with no presumption of correctness. *See Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011); *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012). In construing a statute, our primary purpose is to give effect to the purpose of the legislature. *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000). The Tennessee Supreme Court has outlined the applicable principles that apply to the question of statutory interpretation:

> When dealing with statutory interpretation . . . our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie*

4

*Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006).

*Estate of French v. Stratford House*, 333 S.W.3d 546, 554 (Tenn. 2011). With these principles in mind, we turn to the substance of the appeal.

## Analysis

This case requires us to interpret certain provisions in the Business Tax Act, codified at Tennessee Code Annotated Section 67-4-701 *et seq.*,[6] and construe them properly according to Tennessee law. Specific canons of construction exist when interpreting tax statutes. *See Crown Enters., Inc. v. Woods*, 557 S.W.2d 491, 493 (Tenn. 1977). First, it is well-settled that laws imposing taxes must be construed strongly against the taxing authority. *Id.* (citing *White v. Roden Elec. Supply Co.*, 536 S.W.2d 346 (1976)). Often, courts have interpreted this canon to mean that "if there are doubts or ambiguities contained in the statute, they must be resolved in favor of the taxpayer." *Id.* Still, when the "issue under consideration is whether a particular taxpayer is exempt from a tax, the opposite rule has developed." *Id.* Provisions providing an exemption for certain taxpayers must be "strongly construed against the person claiming the exemption." *Id.* (citing J. Hellerstein, State & Local Taxation 33 (1969)). Every presumption is against the exemption, and a "well-founded doubt" is fatal to the taxpayer's claim. *Tibbals Flooring Co. v. Huddleston*, 891 S.W.2d 196, 198 (Tenn. 1994). We begin our analysis with whether the Department met its burden by demonstrating it was entitled to assess NAJO for business taxes.

Business taxes are generally divided among four classifications. *See generally* Tenn. Code Ann. § 67-4-708. The determination of what classification applies to a particular business "shall be determined according to [its] dominant business activity[.]" *Id.* Here, the Department assessed NAJO for taxes on its gross receipts pursuant to Tennessee Code Annotated Section 67-4-704(a) and Section 67-4-708(2)(A) and (F). Section 67-4-704(a) grants the Department general taxing authority over sales and provides that "the making of sales by engaging in any vocation, occupation, business or business activity enumerated, described, or referred to in § 67-4-708(1)-(5) is declared to be a privilege upon which a state tax is levied at the rates fixed and provided in § 67-4-709." The Department further asserted that NAJO's dominant business activity was properly classified under Classification 2, which provides that gross receipts of the following entities are taxable:

> (2) CLASSIFICATION 2. Each person engaged in the business
> of making sales of the following:

[6] To avoid confusion, and because we can discern no substantive change in the relevant statutes, we use the current version and numbering found in the Business Tax Act.

(A) **New or used motor vehicles**, parts and accessories, tires, batteries, motor boats or other watercraft, marine supplies, outboard motors, mobile homes and campers, motorcycles and go-carts;

*       *       *

(F) **Tangible personal property** not specifically enumerated or described elsewhere in this part[.]

Tenn. Code Ann. § 67-4-708(2) (emphasis added.)

Although this provision explicitly applies to "sales," the Business Tax Act defines "sale" to specifically include "lease[s]." Tenn. Code Ann. § 67-4-702(a)(18)(A)(i) (formerly codified as Tenn. Code Ann. § 67-4-702(B) (2006)). Consequently, the Department contends that NAJO's business activity at issue in this matter, namely the leasing of trucks and trailers to JNJ Express, falls within this provision. NAJO did not dispute that its activities fall within this classification at trial or on appeal. As such, we conclude that the Department has met its burden in demonstrating that it was entitled to assess taxes against NAJO on its gross receipts from leasing trucks and trailers to JNJ Express. However, this conclusion does not end our inquiry in this case.

Instead, NAJO claims that it is entitled to an exemption provided in a different provision under a separate classification, Classification 3, also found in Tennessee Code Annotated Section 67-4-708. Specifically, NAJO claims that its exemption stems from Section 67-4-708(3)(C), which provides:

(3)(C) Each person making **sales of services** or engaging in the business of furnishing or rendering services, except those described [below] . . . :

*       *       *

(xiii) **Lessors** of the following properties: agricultural, airport, forest, mining, oil, and **public utility**[.]

(Emphasis added.)  NAJO contends that because it leases public utility property to JNJ Express, it is a lessor of public utility property.[7] Thus, NAJO argues that it is exempt from business taxes under the above provision. On the other hand, the Department asserts that this exemption only applies to those taxpayers providing "services." Because NAJO claims that

---

[7] Notably, while the parties stipulated that JNJ Express was a public utility, the parties did not stipulate that the trucks and trailers leased to JNJ Express were "public utility property." For purposes of this appeal, we assume the trucks and trailers were classified as such.

this exemption applies, NAJO bears the burden of proving that it is entitled to the exemption. *See **Tibbals Flooring Co. v. Huddleston***, 891 S.W.2d 196, 198 (Tenn. 1994); ***Crown Enters., Inc. v. Woods***, 557 S.W.2d 491, 493 (Tenn. 1977). The existence of any well-founded doubt of the exemption's application to NAJO's leasing of trucks and trailers is fatal to its argument. *See **Tibbals Flooring***, 891 S.W.2d at 198. As such, we address whether NAJO carried its burden by demonstrating that its business activity fell within the exemption, or whether the exemption is indeed one for services.

Our analysis of NAJO's argument begins with an analysis of the exemption provision at issue, specifically Tennessee Code Annotated 67-4-708(3)(C). In construing a statute, our primary purpose is to give effect to the purpose of the legislature. ***Lipscomb v. Doe***, 32 S.W.3d 840, 844 (Tenn. 2000). However, if the plain language of a statute demonstrates that the statute is ambiguous, courts may resort to the canons of statutory construction. Ambiguity results when a statute is capable of conveying more than one meaning. ***Steppach v. Thomas***, 346 S.W.3d 488, 507 (Tenn. 2011) (citing ***State v. Johnson***, 79 S.W.3d 522 (Tenn. 2002); ***Bryant v. HCA Health Servs. Of No. Tenn., Inc.***, 15 S.W.3d 804, 809 (Tenn. 2000)). Thus, before we apply the canons of statutory construction, we must first analyze whether the exemption NAJO claims is ambiguous.

To determine if Tennessee Code Annotated Section 67-4-708(3)(C) is ambiguous, we look at its plain language. ***Cunningham v. Williamson Cnty. Hosp. Dist.***, 405 S.W.3d 41, 43 (Tenn. 2013). Courts will not look beyond the plain meaning of the statute where the language of the statute is clear and unambiguous. *Id.* (citing ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 526 (Tenn. 2010)). Here, the exemption listed in Section 67-4-708(3)(C) applies to taxpayers or taxpaying entities providing "sales of services." Both the terms "sale" and "services" are defined in the Business Tax Act. "Sale" is defined in Tennessee Code Annotated Section 67-4-702(a)(18)(A)(i) as: "[A]ny transfer of title or possession, or both, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatsoever of tangible personal property for a consideration . . . ." In contrast, "services" is defined in subsection (a)(21) as "every activity, function or work engaged in by a person for profit or monetary gain, except as otherwise provided in this part. . . . 'Services' does not include sales of tangible personal property." Thus, it appears that the term "services" expressly excludes "sales." Indeed, the terms "services" and "sales" appear to be mutually exclusive; a single business activity simply cannot constitute both a sale and a service. Consequently, the term "sales of services" as used in Section 67-4-708(3)(C) is ambiguous, and from the statute's plain language, we are unable to discern the legislature's intent.

Here, NAJO's business activity involves the lease of tangible personal property, which clearly constitutes a sale, rather than a service. *See* Tenn. Code Ann. § 67-4-702(a)(18)(A)(i) (providing that the term "[s]ale" includes "lease[s]"). NAJO argues, however, that its

7

activities fall squarely within the exemption language in subsection (3)(C)(xiii) (i.e. "Lessors of the following properties: . . . public utility"). Thus, NAJO argues the exemptions contained in Tennessee Code Annotated Section 67-4-708(3)(C) apply regardless of whether the underlying business activity is a sale or a service. However, our analysis must involve the statute and the relevant counterparts as a whole, and not just one clause of the statute. *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 420 (Tenn. 2013) ("[T]he statute must be construed in its entirety."); *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995) ("In interpreting statutes, [however,] we are required to construe them as a whole [and] read them in conjunction with their surrounding parts[.]"). Accordingly, we must consider, as the Department argues, whether the General Assembly's action in placing the lessors of public utility property exception within the classification regarding "sales of services" or "engaging in the business of furnishing or rendering services" indicates the General Assembly's intent to limit this exemption to only those businesses that are actually rendering services. *See* Tenn. Code Ann. § 67-4-708(3)(C)(xiii).[8] As such, we must analyze this ambiguous provision under additional canons of statutory construction.

In addition to the general principles surrounding statutory construction, *see* discussion *supra*, statutes that are part of a broad statutory scheme should be interpreted *in pari materia*, so as to make that scheme consistent in all its parts. *Wells v. Tenn. Bd. of Regents*, 231 S.W.3d 912, 917 (Tenn. 2007); *Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994); *State v. Allman*, 68 S.W.2d 478, 479 (Tenn. 1934). Courts are required to construe a statute, or set of statutes, "so that the component parts are consistent and reasonable." *In re Sidney J.*, 313 S.W.3d 772, 775 (Tenn. 2010) (quoting *Cohen v. Cohen*, 937 S.W.2d 823, 827 (Tenn. 1996)). We also have a duty to interpret a statute in a manner that makes no part inoperative. *In re Sidney J.*, 313 S.W.3d at 775–76 (citing *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975)). "Statutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both." *In re Kaliyah S.*, --- S.W.3d ---, 2015 WL 273659, at *11 (Tenn. 2015). The court's interpretation must not render any part of the statute "inoperative, superfluous, void or insignificant." *Nissan N. Am., Inc. v. Haislip*, 155 S.W.3d 104, 106 (Tenn. Ct. App. 2004).

In addition to other legislation, a court may also look to an administrative regulation or interpretation promulgated by the state agency in determining legislative intent. *Nashville Mobilphone Co. v. Atkins*, 536 S.W.2d 335, 340 (Tenn. 1976). However, we recognize that administrative regulations and interpretations are not controlling. *See Carr v. Chrysler Credit Corp.*, 541 S.W.2d 152, 156 (Tenn. 1976). Still, "a state agency's interpretation of a statute

---

[8] While NAJO champions its own interpretation of the statute at issue, we note that NAJO concedes in its reply brief that the statute is ambiguous.

that the agency is charged to enforce is entitled to great weight in determining legislative intent." *Consumer Advocate Div. v. Greer*, 967 S.W.2d 759, 761 (Tenn. 1998) (citing *Nashville Mobilphone*, 536 S.W.2d at 340) ("We agree that such an interpretation is entitled to consideration and respect and should be awarded appropriate weight, and this is particularly true in the interpretation of doubtful or ambiguous statutes."). However, when a court finds that an agency's interpretation is erroneous, the court is "impelled to depart from it." *Collins v. McCanless*, 169 S.W.2d 850, 853 (Tenn. 1943).

In addition to the foregoing principles of statutory construction, this Court is further guided by the doctrine of *ejusdem generis*.[9] This concept was discussed by our Supreme Court in *Sallee v. Barrett*, 171 S.W.3d 822, 828–29 (Tenn. 2005):

> Under this doctrine of statutory construction, "where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated." *Black's Law Dictionary* 517 (6th ed. 1990); *see also Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994) (citing *Nance ex rel. Nance v. Westside Hosp.*, 750 S.W.2d 740, 743 (Tenn. 1988)); *State v. Sims*, 909 S.W.2d 46, 49 (Tenn. Crim. App. 1995). In other words, "'where it clearly appears that the lawmaker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace any other than those within the class.'" *Automatic Merch. Co. v. Atkins*, 205 Tenn. 547, 327 S.W.2d 328, 333 (1959) (quoting *State v. Grosvenor*, 149 Tenn. 158, 258 S.W. 140, 141 (1924)).

The issue in this case requires us to use the canons of statutory construction in interpreting the exemption NAJO claims in Tennessee Code Annotated Section 67-4-708(3)(C)(xiii).

When applying the canons of statutory construction in this case, we first turn to the relevant administrative regulations promulgated by the Department in an attempt to gauge the legislative intent. In *Carr v. Chrysler Credit Corp.*, 541 S.W.2d 152 (Tenn. 1976), the Tennessee Supreme Court opined: "Prior administrative interpretations and rules of statutory construction are merely aids in attempting to arrive at the legislative intent, and no one of

---

[9] The doctrine of *ejusdem generis* has long been recognized by our Supreme Court. *See State v. Sims*, 909 S.W.2d 46 (Tenn. Ct. App. 1995) (citing *Lyons v. Rasar*, 872 S.W.2d 895 (Tenn. 1994); *Davidson Cnty. v. Hoover*, 364 S.W.2d 879 (Tenn. 1963); *Morgan Bros v. Dayton Coal & Iron Co.*, 183 S.W. 1019 (Tenn. 1916)).

them is controlling." *Id.* at 156. In that vein, we examine Tennessee Rule and Regulation 1320-4-5-.48, an administrative regulation, to aid in our interpretation of the exemption provision at issue in this case. The regulation provides:

> (1) A person exempt under the provisions of T.C.A. § 67-4-708, classification 3, from paying the tax on receipts from services rendered is, **nevertheless, liable for the tax on receipts from sales of tangible personal property**.
> (2) A person engaged in the business of selling tangible personal property is liable for the Business Tax even though he may call his business a service.

Tenn. Comp. R. & Regs. 1320-04-05-.48 (emphasis added). This regulation, read *in pari materia* with the phrase "sales of services" in subsection (3)(C), tends to show that the purpose of the exemption provision is the opposite of NAJO's contention: that the Legislature intended only to exempt those taxpayers providing services, not sales.[10] The practical effect of this regulation is to provide that a taxpayer who is exempt from business taxes for one aspect of its activities may still be liable for business taxes on its receipts from sales (i.e. leases) of tangible personal property. Furthermore, this regulation reinforces the notion that the taxpayer will nevertheless be liable on its receipts derived from sales of tangible personal property, whether or not those receipts stem from a sale to a public utility. Thus, this regulation supports the contention the exemption at issue is limited to only those persons and entities providing "services." *Nashville Mobilphone*, 536 S.W.2d at 340.

Furthermore, another regulation, Tennessee Rule and Regulation 1320-04-05-.41(1) supports the Department's contention that the exemption does not apply to NAJO, but applies to lessors leasing real property, providing: "Persons who receive monies or other consideration for the sale or rental of **real property** belonging to them **are not liable** for the Business Tax on such sales or rentals." NAJO posits that the exemption it claims cannot only be interpreted to exempt lessors of real property because, by virtue of Rule 1320-04-05-.41(1), they are exempt from the Business Tax regardless. Thus, in NAJO's view, these two complimentary provisions cannot exist simultaneously because one is necessarily superfluous. Tennessee Code Annotated Section 67-1-102 indicates that the Department Commissioner "is vested with power to prescribe rules and regulations not inconsistent with law." Accordingly, all Rules and Regulations on this subject must be consistent with corresponding statutes. Here, Tennessee Rule and Regulation 1320-04-05-.41(1) clearly

---

[10] At any rate, even if NAJO was classified as a "[l]essor of . . . public utility" property within the meaning of the remaining language of the exemption provision, the regulation, when read in conjunction with Section 67-4-708(3)(C), demonstrates that NAJO would still be liable for tax on gross receipts from its sales/leases of tangible personal property. *See* Tenn. Comp. R. & Regs. 1320-04-05-.48.

indicates that lessors of real property are not liable for business taxes. To construe Tennessee Code Annotated Section 67-4-708(3)(C)(xiii) as likewise indicating that lessors of public utility real property are exempt from business taxes is not inconsistent with the regulation. Therefore, such a construction is certainly permissible. *See **Collins***, 169 S.W.2d at 853 (providing that, only when a court finds that the regulation promulgates an erroneous interpretation or construction, is the court "impelled to depart from it"). Thus, we conclude that Tennessee Rule and Regulation 1320-04-05-.41(1) reinforces the Department's argument that the General Assembly only intended to exempt lessors of real property from business taxes, rather than lessors of tangible personal property.

Next, we turn to the other statutory provisions surrounding the specific exemption that NAJO claims in subsection (3)(C)(xiii). The specific provision in subsection (3)(C)(xiii) provides an exemption for "[l]essors of the following properties: . . . public utility." Tenn. Code Ann. 67-4-708(3)(C)(xiii). NAJO contends that, because it is undisputed that it leases tangible personal property to a public utility (i.e. JNJ Express), it squarely falls within this provision. However, the other exemptions listed in subsection (3)(C) tend to support the Department's argument that the exemption at issue applies only to the rendition of services. Under the doctrine of *ejusdem generis*, we must conclude that it "appears that the lawmaker was thinking of a particular class of persons or objects"—namely "services"—when creating the list of exemptions in subsection (3)(C). *See **Sallee***, 171 S.W.3d at 828–29 (applying the doctrine of *ejusdem generis* to determine that the tort of "infliction of mental anguish," as referenced in the Governmental Tort Liability Act ("GTLA"), was an intentional tort because "[a]ll of the other torts listed [in the GTLA] are intentional torts[]"). As illustration, we note that subsection (3)(C) contains 16 exemptions. Out of the listed 16 enumerated exemptions, 13 of the exemptions specifically contain the term "service" or "services." Not including the exemption claimed by NAJO, the remaining 2 exemptions do not contain the word "service" or "services," but they are activities that tend to be more associated with the rendering of services than with sales, such as the provision of public utilities and the operation of a building. *See* Tenn. Code Ann. § 67-4-708(3)(C)(ix), (xii). Because the other enumerated exemptions relate to the provision of services, we must conclude that the exemption for "[l]essors of . . . public utility [properties]" also relates to the provision of services. ***Id.*** As previously discussed, however, NAJO's business activity simply does not constitute a service. Accordingly, there is significant doubt that the General Assembly intended NAJO to be exempt from business taxes under this classification.

Finally, we address NAJO's contention that the exemption in Tennessee Code Annotated Section 67-4-708(3)(C)(xiii) ("Lessors of the following properties: . . . public utility") would be rendered superfluous or inoperative upon a determination that the

11

exemption did not include NAJO or other taxpayers similarly situated to NAJO.[11] To support its argument, NAJO contends that the definition of "[l]essor" necessarily stems from the definition of "lease." "Lease" is defined in Section 67-4-702(a)(1) as "the leasing or renting of **tangible personal property**." Tenn. Code Ann. § 67-4-702(a)(1). Thus, NAJO asserts that the exemption cannot apply to real property (as the Department asserts) because a "[l]essor" is only someone who leases tangible personal property.

We respectfully disagree. First, NAJO's assumption that "[l]essor" is defined by its counterpart term "lease" creates an inconsistent construction of the statute, putting the exemption provision in direct contravention of at least two regulations. As discussed above, if the exemption for "[l]essors" applied to sales of tangible personal property as NAJO contends, that exemption would be rendered meaningless, as a separate regulation specifically mandates that those taxpayers exempt under subsection (3)(C) are still "nevertheless, liable for the tax on receipts from sales of tangible personal property." Tenn. Comp. R. & Regs. 1320-04-05-.48. In addition, another regulation, Tennessee Rule and Regulation 1320-04-05-.41(1) specifically provides that persons receiving monies for selling or renting real property enjoy an exemption on such sales or rentals. Thus, the substance of both Rule 1320-04-05-.48 and Rule 1320-04-05-.41 support the conclusion that the General Assembly intended to exempt "lessors" of real property from business taxes, while requiring "lessors" of tangible personal property to make tax payments.

Second, we decline to define the term "[l]essor," as contained in the pertinent exemption, as limited by the definition of the term "lease." We note that the definition section of the Business Tax Act includes definitions for certain transactions, such as "sale" and "wholesale," and for the person or entity concerned with the transaction, such as "seller" and "wholesaler." *See generally* Tenn. Code Ann. § 67-4-702(a) (listing terms and specific definitions to be used in accordance with the Business Tax Act). The General Assembly, however, chose not to define the term "lessor" within the Business Tax Act. Where a statute does not define a term, the term should be construed according to its plain and ordinary meaning, including its dictionary definition. ***Shockley v. Mental Health Cooperative, Inc.***, 429 S.W.3d 582, 591 (Tenn. 2013) (citing ***State v. Majors***, 318 S.W.3d 850, 859 (Tenn.2010) (quoting ***State v. Williams***, 690 S.W.2d 517, 529 (Tenn.1985))); *see also* 82 C.J.S. *Statutes* § 415 ("If the statute does not sufficiently define a word used therein, the court may consider all known definitions of the word, including dictionary definitions, in order to determine the plain and ordinary meaning of the word.") (footnotes omitted). The word "lessor" is commonly defined as: "One who conveys real or personal property by lease." *Black's Law*

---

[11]At the trial level and on appeal, NAJO has repeatedly argued that, if the exemption provision in Section 67-4-708(3)(C)(xiii) did not apply to NAJO, it would not apply to any taxpayer.

*Dictionary* 986 (9th ed. 2009). The General Assembly is presumed to know the state of the law, including our familiar rules of statutory construction. *See Dixon v. Holland*, 70 S.W.3d 33, 37 (Tenn. 2002). Accordingly, had the General Assembly intended to limit the term "lessor" to only those that lease tangible personal property, in contrast to that term's common meaning, they certainly could have done so. The General Assembly chose not to take that action in this case; therefore, we must conclude that they intended the term "lessor" to be defined according to its ordinary meaning. Based on the foregoing, we cannot conclude that, if the exemption does not apply to NAJO or those entities similarly situated, it would become completely inoperative because it would still possibly apply to lessors of the real properties listed.

Based on the foregoing, NAJO has shown, at most, that the exemption it claims is ambiguous. Through application of the canons of statutory construction, we have uncovered a well-founded doubt as to the exemption's application to NAJO's leasing of trucks and trailers to JNJ Express. *See Tibbals Flooring*, 891 S.W.2d at 198. We must conclude that NAJO has not met its burden in demonstrating that the exemption at issue applies to its business activities because a well-founded doubt exists in the statute's interpretation. The trial court, in granting summary judgment to the Department, specifically found in its written order that the provision was unambiguous. This Court may affirm a trial court's award of summary judgment on grounds different from those which provided the basis for the trial court's decision. *Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001). Accordingly, we affirm the judgment of the trial court granting summary judgment in favor of the Department.

## Conclusion

The judgment of the Shelby County Chancery Court is affirmed, and this case is remanded for further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed against Appellant NAJO Equipment Leasing, LLC and its surety.

_____
J. STEVEN STAFFORD, JUDGE