FILED

11/13/2018

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 1, 2018

## FDA PROPERTIES, LLC v. DAVID DOYLE MILLER

**Appeal from the Circuit Court for Williamson County**
**No. 2013-510        Walter C. Kurtz, Senior Judge**

———————————————————

### No. M2018-00818-COA-R3-CV

———————————————————

This appeal concerns the potential dissolution of an LLC under the Tennessee Limited Liability Company Act due to the bankruptcy of one of its members. The trial court held that the LLC was not dissolved under the Act because neither section 48-245-101(a)(5)(G) nor 48-245-101(b) of the Tennessee Code applied to the LLC. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and RICHARD H. DINKINS, JJ., joined.

Charles M. Cain, II, Franklin, Tennessee, for the appellant, David Doyle Miller.

Scott R. Brown and Tonya J. Austin, Nashville, Tennessee, for the appellee, FDA Properties, LLC.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

FDA Properties, LLC ("FDA") was formed in August 2005 with Mansour Fazilat ("Mr. Fazilat"), Shirley Fazilat, Anthony Fazilat, and David Doyle Miller as the initial members.[1] The ownership interests of the four members were split as follows: (1) Mr.

—————————————

[1] Mr. Miller, the only non-relative member of the LLC, served as Mr. Fazilat's accountant prior to the formation of FDA.

Fazilat- 60%; (2) Shirley Fazilat- 20%; (3) Anthony Fazilat-10%; and (4) Mr. Miller-10%. In conjunction with the forming of FDA, an operating agreement was also drafted, which delineated the purpose as well as the rules governing the LLC.[2] The purpose of the LLC, according to the operating agreement, was to buy and sell real estate. In furtherance of this purpose, five separate lots were purchased through the respective contributions of the members. One of the lots required FDA to obtain a $1.4 million loan from SunTrust Bank in order to erect a building on the property. FDA initially drew only $900,000 on the loan; however, at the maturity date, on June 1, 2012, a balloon payment of approximately $402,000 would be due. Mr. Miller continued to make payments on the loan until October 2011, when he became unable to contribute to the scheduled payments. Soon after, on April 16, 2012, Mr. Miller declared bankruptcy. As a consequence, Mr. Miller did not contribute to the balloon payment, which was paid entirely by Mr. Fazilat.

After Mr. Miller's bankruptcy, the Fazilats continued to refer to Mr. Miller as a member of FDA and also continued operating the business. In the interim, Mr. Miller and Mr. Fazilat discussed a potential buyout of Mr. Miller's interest in FDA due to concerns stemming from Mr. Miller's personal bankruptcy. However, worried about Mr. Miller's inability to contribute to the company, on August 30, 2013, the remaining members purportedly expelled him from FDA through a written document. No formal vote was ever taken expelling Mr. Miller from FDA. After purportedly expelling Mr. Miller, FDA sold the SunTrust Property without paying Mr. Miller any of the proceeds.

On October 17, 2013, FDA filed suit, requesting declaratory relief pursuant to

---

[2] Regarding dissolution, the operating agreement provided:

    12.1. Dissolution. The Company shall be dissolved and its affairs wound up, upon the first to occur of the following events (which, unless the Members agree to continue the business, shall constitute Dissolution Events):

(a) the expiration of the Term, unless the business of the Company is continued with the consent of a Majority in Interest of the Members;

(b) by affirmative vote of a Majority in Interest of the Membership entitled to vote;

(c) the occurrence of any event that terminates the continued membership of a Member pursuant to the Act, unless there are at least two (2) remaining Members and the existence and business of the Company is continued by the consent of not less than a Majority in Interest of the Members if so provided in the Articles within 90 days after such termination; or

(d) as otherwise may be required by law.

Rule 57 of the Tennessee Rules of Civil Procedure. Specifically, FDA requested a declaration that Mr. Miller's interest in FDA terminated when he declared bankruptcy or, in the alternative, his interest in the company terminated when he was expelled by the remaining members.[3]

Mr. Miller filed an answer and counterclaim on November 14, 2013. In the counterclaim, Mr. Miller requested a declaratory judgment that his membership interest did not terminate when he declared bankruptcy or when the remaining members purportedly expelled him from FDA; instead, Mr. Miller claimed he was still a member of FDA and that the company was dissolved and should be wound up.[4]

Discovery ensued, and both parties eventually filed motions for summary judgment. The court separately denied each party's motion for summary judgment. However, the trial court did find that Mr. Miller's interest in FDA was terminated when he filed for bankruptcy.

Mr. Miller, after the denial of his motion for summary judgment, filed a "Motion for Permission to Appeal Pursuant to Tennessee Rule of Appellate Procedure 9" ("Motion for Permission to Appeal") with the trial court. In his motion, Mr. Miller argued that the trial court misquoted section 48-245-101(a)(5)(G) of the Tennessee Code[5] in deciding that his interest in FDA was terminated when filing for bankruptcy and that the court incorrectly determined there were material facts in dispute regarding whether a vote occurred pursuant to section 48-245-101(b). Moreover, Mr. Miller argued that granting an appeal would prevent irreparable injury and "needless, expensive, and protracted litigation." The trial court denied Mr. Miller's motion. In addition to denying the motion, the court also addressed arguments regarding statutory interpretation first raised by FDA in response to Mr. Miller's Motion for Permission to Appeal. The court noted that while the arguments should have been raised at "a more appropriate time[,]" it decided to address them regardless in order to correct its previous orders as well as "for reasons of judicial economy." At the onset, the court admitted the language of section

---

[3] The complaint further asserted that Mr. Miller's interest in FDA was worth nothing because he was judicially estopped from asserting any other amount due to valuing his interest in FDA as $0.00 on a bankruptcy disclosure statement. However, the court found that Mr. Miller was not judicially estopped by the disclosure statement, and the valuation of Mr. Miller's interest is not being argued on appeal.

[4] Mr. Miller also claimed he was entitled to unpaid fees for accounting and bookkeeping services. However, those claims were later nonsuited.

[5] The trial court quoted the language of section 48-245-101(a)(5)(G) as the following: "Upon the occurrence of the bankruptcy of any member, that member's interest in the LLC terminates. . . unless the articles or operating agreement provide that the event will not constitute an event of dissolution."

48-245-101(a)(5)(G) quoted in the summary judgment orders was incorrect, then the court proceeded to address "the statutory interpretation issues raised by the parties." Specifically, the court addressed "(1) whether the events listed in Tenn. Code. Ann. § 48-245-101(a)(5) apply to an LLC formed after July 1, 1999; and (2) whether the savings provision in Tenn. Code. Ann. § 48-245-101(b) applies to an LLC formed after July 1, 1999." The court first determined that the 1999 amendments to the original Tennessee Limited Liability Company Act applied to FDA, not the revised act.[6] Next, the court analyzed the text of section 48-245-101 by examining the language of the statute itself and also comparing the text of the Act with the 1999 amendments to the original text. After reviewing both versions of the statute, the court agreed with FDA, concluding that subsections 48-245-101(a)(5) and (a)(6) "address different categories of LLC[]s[,]" with (a)(6) applying to LLCs formed after 1999 as well as LLCs formed before 1999 that explicitly elected to be governed by the 1999 amendments. In so concluding, the court found that the dissolution events contained in (a)(5) did not apply to LLCs formed after 1999, such as FDA. Moreover, the court also found that subsection (b) was not applicable to FDA either because "[subsection (b)] was intended as an exception to the dissolution events listed in [subsection (a)(5).]" Therefore, according to the trial court, the remaining members of FDA were not required to take a vote in order to prevent the LLC from being dissolved.

Subsequently, on February 26, 2018, FDA filed a motion for partial summary judgment, arguing that Mr. Miller's interest terminated when he filed for bankruptcy and that Mr. Miller was judicially estopped from arguing his interest in FDA was worth more than $0.00. The court granted partial summary judgment on March 20, 2018, with respect to whether Mr. Miller's interest in the company terminated when he filed for bankruptcy and adopted the reasoning contained in the order denying the Motion for Permission to Appeal.[7] However, the court also cited to subsection (a)(5)(G) to support its finding that Mr. Miller's interest in FDA terminated when he declared bankruptcy. The court also denied the partial summary judgment motion in regards to whether Mr. Miller was judicially estopped from asserting an amount greater than $0.00 for his interest in FDA.

---

[6] Because FDA was formed in 2005, the original LLC Act applies. "The revised [LLC] Act [only] applies to all LLCs formed after January 1, 2006, and to LLCs formed prior to that date if they expressly choose to be governed by the revised Act." *Lascassas Land Co., LLC v. Allen*, No. M2017–01400–COA–R3–CV, 2018 WL 1733449, at *5 n.6 (Tenn. Ct. App. Apr. 10, 2018) (citing *Bridgeforth v. Jones*, No. M2013-01500-COA-R3-CV, 2015 WL 336376, at *24 n.18 (Tenn. Ct. App. Jan. 26, 2015)).

[7] Senior Judge Walter Kurtz presided over the hearing for partial summary judgment and the bench trial. The trial judge who had presided over the previous motions and hearings was Judge Michael W. Binkley.

4

Following the resolution of the motion for partial summary judgment, a bench trial was held on March 26 and 27, 2018, solely to determine the value of Mr. Miller's interest in FDA at the time his interest was terminated. The court rejected FDA's judicial estoppel argument and valued Mr. Miller's interest at $37,600; however, the valuation surmised by the court is not the subject of this appeal. Mr. Miller filed a timely notice of appeal.

## II. ISSUES PRESENTED

Mr. Miller raises the following issues on appeal, which are restated as follows:

(1) Whether the trial court erred in finding that subsections 48-245-101(a)(5) and (b) of the Tennessee Code do not apply to FDA; and

(2) Whether the trial court erred in finding that FDA was not dissolved within 90 days for failure to take a vote to continue operation pursuant to section 48-245-101(b) of the Tennessee Code.[8]

## III. STANDARD OF REVIEW

Because a trial court's decision to grant a summary judgment motion presents a question of law, our review is de novo with no presumption of correctness. *Najo Equip. Leasing, LLC v. Comm'r of Revenue*, 477 S.W.3d 763, 766 (Tenn. Ct. App. 2015) (citing *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997)). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Elliott v. Apple Inv'rs Grp. LLC.,* No. W2017-02385-COA-R3-CV, 2018 WL 3860732, at *3 (quoting Tenn. R. Civ. P. 56.04). In order for the moving party to satisfy its burden of production, the party must either "(1) affirmatively negat[e] an essential element of the nonmoving party's claim[;] or (2) [] demonstrat[e] that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). If a motion for summary judgment is properly supported, then the nonmoving party may not rest solely on allegations or denials asserted in the pleadings, but must present "specific facts showing there is a genuine issue for trial." *Elliott,* 2018 WL 3860732, at *3. "The nonmoving party must demonstrate the existence of specific facts

---

[8] Mr. Miller raises a third issue on appeal—"Whether the trial court erred in denying [Mr.] Miller's Motion for Summary Judgment[.]" This issue is pretermitted by our decision herein.

in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Id.* (internal quotations omitted). If the nonmoving party's evidence "at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial[,]" then summary judgment should be granted. *Id.*

The issues before this court are ones of statutory construction. The proper interpretation of a statute may be appropriately decided at the summary judgment stage. *Najo Equip. Leasing, LLC ,* 477 S.W.3d at 766. Statutory construction is a question of law that is reviewed de novo with no presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). When we interpret statutes, "[o]ur primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope." *Id.* We presume that every word in the statute has meaning and purpose as long as the "obvious intention of the General Assembly is not violated" in doing so. *Id.* at 613-14. If the statute is clear, we apply the plain meaning of the statute. *Id.* "Our obligation is simply to enforce the written language." *Najo Equip. Leasing, LLC,* 477 S.W.3d at 766 (quoting *Estate of French v. Stratford House*, 333 S.W.3d 546, 554 (Tenn. 2011)).

## IV. DISCUSSION

### A. Applicability of subsections 48-245-101(a)(5) and (b) to FDA

This case requires us to interpret the provisions of the Tennessee Limited Liability Company Act and to determine which provisions apply to FDA. Section 48-245-101(a)-(b) of the Tennessee Code states:

(a) DISSOLUTION EVENTS. Except as stated in subsection (b) or (c), an LLC is dissolved upon the occurrence of any of the following events:

(1) If a period is fixed in the articles for the duration of the LLC, upon the expiration of that period;

(2) By action of the organizers pursuant to § 48-245-201 or by the members pursuant to § 48-245-202, or upon the occurrence of an event specified in the articles or operating agreement;

(3) By order of a court pursuant to § 48-245-901 and § 48-245-902;

(4) By action of the secretary of state pursuant to § 48-245-302;

(5) Except as provided in subdivision (a)(6) for LLCs created prior to July 1, 1999, upon the occurrence of any of the following events, unless the

articles or operating agreement provide that one or more of the following events will not constitute an event of dissolution:

  (A) Death of any member;

  (B) Retirement from membership of any member;

  (C) Resignation or other withdrawal of any member;

  (D) Acquisition of a member's complete membership interest by the LLC;

  (E) Assignment of a member's governance rights under § 48-218-102 which leaves the assignor with no governance rights;

  (F) Expulsion of any member if expulsion is permitted by the articles;

  (G) Bankruptcy of any member;

  (H) Dissolution of any member;

  (I) Insanity of any member; or

  (J) The occurrence of any other event that terminates the continued membership of a member in the LLC.

(6) For LLCs formed on or after July 1, 1999, or for LLCs formed prior to July 1, 1999, that elect by providing in their articles for the amendments by Acts 1999, ch. 455, regarding dissolution events to apply to such LLC, the LLC shall be dissolved upon the occurrence of:

  (A) In accordance with § 48-245-202 or any event specified in the articles or operating agreement including, but not limited to, events of withdrawal by a member or action or procedure as set forth in the articles or operating agreement; or

  (B) A merger in which the LLC is not the surviving organization.

(b) Notwithstanding subdivisions (a)(5)(A)-(J), including if and as modified by subsection (c), the LLC is not dissolved and is not required to be wound up by reason of any event that terminates the continued membership of a

7

member if there is at least one (1) remaining member and the existence and business of the LLC are continued by the consent of a majority vote of the remaining members or such greater vote of the remaining members as provided in the articles. Such consent must be obtained no later than ninety (90) days after the dissolution event. The granting of consent is at the discretion of each member and may be unreasonably withheld.

Tenn. Code Ann. § 48-245-101(a)-(b) (1999).

On appeal, Mr. Miller argues that the trial court erred in finding that subsections (a)(5) and (b) did not apply to FDA. The trial court's findings are somewhat unclear. In the partial summary judgment order, the trial court purportedly incorporated the decision from the Motion for Permission to Appeal order. As explained previously, the trial court's order denying the Motion for Permission to Appeal held that subsection (a)(5) does not apply to LLCs, such as FDA, formed after July 1, 1999, and that subsection (b) was inapplicable because it is an exception to subsection (a)(5). Nevertheless, the trial court, ruling on the motion for partial summary judgment, determined that Mr. Miller's interest terminated at bankruptcy under subsection (a)(5). Despite citing to subsection (a)(5), the trial court found that subsection (b) did not apply, incorporating the reasoning found in the Motion for Permission to Appeal order. It is unclear from the orders why subsection (a)(5) would seemingly apply to terminate Mr. Miller's interest as a member of FDA but not apply to FDA itself. Disregarding this logical incongruity, in summary, the trial court's partial summary judgment order effectively held that subsection (a)(5) did not apply to FDA but did apply to its member, Mr. Miller, and subsection (b) did not apply to FDA either. We now press on to our de novo review of the statutory language.

The statute begins in subsection (a) stating that "[e]xcept as stated in subsection (b) or (c), an LLC is dissolved upon the occurrence of any of the following events[.]" Tenn. Code Ann. § 48-245-101(a). Therefore, according to the plain language of the statute, any of the following subparts of subsection (a) constitute an event that will dissolve FDA, unless an exception in subsection (b) or (c) is met.

Subsection (a) lists six distinct dissolution events in subsections (1) through (6). None of subsections (1) through (4) apply to this case. Subsection (5) states: "Except as provided in subdivision (a)(6) for LLCs created prior to July 1, 1999," any of the following events will constitute dissolution of the LLC, "unless the articles or operating agreement provide that one or more of the following events will not constitute an event of dissolution[.]" Tenn. Code Ann. § 48-245-101(a)(5). FDA argues that subsection (a)(5) does not apply to FDA because "th[e] subsection does not apply to an LLC formed after July 1, 1999." However, this argument is untenable with the plain meaning of subsection (a)(5). The statute clearly states the exact opposite. Tenn. Code Ann. § 48-245-101(a)(5) ("Except as provided . . . for LLCs created prior to July 1, 1999 . . ."). The prepositional

phrase set off by a comma modifies the rest of the sentence to exclude all LLCs encompassed in (a)(6) created before July 1, 1999 and electing to be bound by the 1999 amendments from the dissolution events listed in the rule. *Id. See generally* CHERYL GLENN & LORETTA GRAY, THE HODGES HARBRACE HANDBOOK 33, 79 (17th ed. 2010) (providing examples of prepositional phrases and stating that they may be used as modifiers of sentences). FDA was formed in 2005, well after July 1, 1999. Therefore, the exception does not apply to FDA.

Moreover, the statute also allows an LLC's operating agreement to trump the statutory provision and remove an event as a dissolution trigger. Tenn. Code Ann § 48-245-101(a)(5). FDA's operating agreement does not remove any of the statutory dissolution events. Because FDA is not within the exception described in the prepositional phrase for LLCs created before July 1, 1999, and the operating agreement does not remove any of the statutory dissolution events, the events in (a)(5) apply to FDA.

Subsection (a)(5) goes on to list 10 separate dissolution events. Tenn. Code Ann. § 48-245-101(a)(5)(A)-(J). "[M]aterial contained in unindented text relates to all the following or preceding indented subparts." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 156 (2012). Subsections (A) through (J) are indented under subsection (a)(5), indicating that those subsections contain the events mentioned in (a)(5). The pertinent event to this case is subsection (G), which states the "[b]ankruptcy of any member" will cause dissolution of an LLC. Tenn. Code Ann. § 48-245-101(a)(5)(G). In this instance, the parties do not dispute that Mr. Miller, a member of FDA, entered into bankruptcy. Consequently, according to the plain language of the statute, when Mr. Miller's bankruptcy triggered dissolution. *See People Place Auto Hand Carwash, LLC v. Comm'r of Internal Revenue,* 126 T.C. 359, 364 n.9 (T.C. 2006) (stating that "Tennessee law provides that an LLC is generally dissolved upon the occurrence of any of various specified events, including the '[b]ankruptcy of any member.'").

To summarize, subsection (a) lists a number of events that cause dissolution. Tenn. Code Ann. § 48-245-101(a). In this instance, subsection (a)(5) applies to FDA, as the company was not formed before July 1, 1999, nor does FDA's operating agreement exclude the events listed under the subsection as potential dissolution triggers. Tenn. Code Ann. § 48-245-101(a)(5). Mr. Miller declared bankruptcy, constituting a dissolution event under subsection (a)(5)(G). Tenn. Code Ann. § 48-245-101(a)(5)(G). Because dissolution was triggered under section 48-245-101(a)(5)(G), the LLC "must be wound up and terminated" absent satisfying the exception outlined in subsection (b) or (c). Tenn. Code Ann. § 48-245-101(d) (1999). The trial court's decision that subsection (a)(5) does not apply is reversed.

9

Mr. Miller further argues that subsection (b) is also applicable to FDA. The trial court found that subsection (b) did not apply to FDA, as the subsection was an exception to subsection (a)(5), which the trial court had deemed inapplicable. Because we have concluded that FDA was covered by subsection (a)(5), subsection (b) is applicable as a possible exception to dissolution. Tenn. Code Ann §48-245-101(b) ("Notwithstanding subdivisions (a)(5)(A)-(J) . . . the LLC is not dissolved . . . by reason of any event that terminates the continued membership of a member if . . . ."). We now turn to the substance of subsection (b).

### B. Voting exception under section 48-245-101(b)

Mr. Miller argues that the remaining members of FDA were required to take a vote within 90 days of his bankruptcy under section 48-245-101(b) in order to prevent dissolution irrespective of the language of the operating agreement. However, an LLC may contract around certain provisions of the LLC Act. *See Ruth v. Home Health Care of Middle Tenn., LLC,* No. E2011–02681–COA–R3–CV, 2012 WL 4483005, at *7 (Tenn. Ct. App. Oct. 1, 2012) (holding that the LLC Act "allows parties the freedom to contract with respect to events of dissolution"). Here, the language of the operating agreement supplants the requirements of subsection (b), as the operating agreement provides what is required by the members to avoid dissolution and winding up of FDA.[9] However, in ruling on the summary judgment motions, the trial court made no specific determinations interpreting the language of the operating agreement. "Generally, this Court does not decide issues that were not first decided by the trial court." *Shaw v. Gross,* No. W2017–00441–COA–R3–CV, 2018 WL 801536, at*10 (Tenn. Ct. App. Feb. 9, 2018). "[W]e are limited in authority to the adjudication of issues that are presented and decided in the trial courts . . . ." *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976). Because the meaning of the language of Paragraph 12.1(c) of the operating agreement was never addressed by the trial court, we remand this issue for the trial court to consider. *See Taylor v. Cloud*, No. E2014–02223–COA–R3–CV, 2015 WL 4557328, at *6 (Tenn. Ct. App. July 29, 2015) (declining to consider an issue where the trial court "made no specific findings regarding the interpretation of [a] fee agreement" ); *Copper Basin Fed. Credit Union v. Fiserv Sols., Inc*., No. E2012–02145–COA–R3–CV, 2013 WL 3421916, at *5 (Tenn. Ct. App. July 3, 2013) ("This Court cannot fully analyze this issue even though it was raised at the trial court level, as the trial court never considered nor ruled upon it.").

---

[9] *See supra* note 2.

## V. Conclusion

The judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion. Costs are taxed against the Appellee, FDA Properties, LLC, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE

11