Sneed, J.,
delivered the opinion of the Court.
The complainant’s intestate, Lewis T. Bond, in his lifetime, by his agent, James Bond, bargained and sold to the defendant, Nathan Greenwald, his entire cotton crop of 1861, in bulk. At the time of the contract of sale a portion of the cotton was ginned and a portion in the seed. The sale was in the summer of 1862, and prior to the first day of August. It was stipulated in the bargain that the defendant was to take the cotton at the gin of Lewis T. Bond, in Haywood county, as it was ginned, and pay for it as it was ready — the ginning and baling to be done by the bargainor. The price contracted to be paid was twenty-six cents per pound in gold or its equivalent — the weights to *457 be ascertained at the gin. Under this contract fifty-two bales of cotton — being more than one-half of the crop of 1861 — were taken possession of by the defendant at the gin, aggregating in weight thirty thousand six hundred and eighty-four pounds. The circumstances abundantly show that the contracting parties understood and intended that the sale of the crop in bulk had effected a perfect transmutation of ownership in the cotton. Prom the, moment of the sale, the bargainor ceased to claim or control the cotton, except to consummate his undertaking to gin and bale it — and the purchaser exercised acts of ownership oyer it by urging and directing the operations of the gin, and claiming the whole of it as his own. The whole crop when ginned and baled amounted to eighty-two bales' — -of which the fifty-two bales which were carried away by the defendant were ginned and packed at the time .of the sale. The other thirty bales were ginned and packed and weighed within a few weeks after, and lay thus ready at the gin for one month afterwards — the defendant in the mean time for some unexplained reason neglecting to haul them away. The civil war was flagrant at the time of these transactions, and much of "West Tennessee was in the military occupation of the Federal armies. The thirty bales of cotton thus lying at the gin house of complainant’s intestate were seized and carried off by a party of Federal - soldiers, under the pretext that they were the property of a Confederate soldier. The defendant has never *458 paid for any portion of tire cotton, and the hill was brought to compel him to pay for the entire crop of eiglrty-two bales, at the contract price, in gold, or its equivalent in legal tender Treasury notes.
The defendant admits that he obtained actual manual possession of the fifty-two bales, but denies the delivery of the balance. He insists that the agent of complainant’s intestate should be compelled to re-imburse him for alleged losses sustained ,by him in consequence of the non-delivery of a large lot of cotton purchased of him individually — and especially that he should not be compelled to pay for the fifty-two bales actually received, without an account of his losses by the non-delivery of the thirty bales. .
The .Chancellor was of opinion that the defendant was liable only for the fifty-two bales so actually carried away by him — and at the price of twenty-six cents per pound — -and gave a decree against him for ten thousand five hundred and four dollars and eighty-three cents, the amount with interest computed. The complainant has brought the cause by writ of error to this court, and asks a reversal of that decree.
We cannot concur in the opinion of the Chancellor as to the rights and equities of these parties. The principle of law upon which the Chancellor doubtless proceeded, is thus stated:
“Where, by the agreement, the vendor is to do anything to the goods for the purpose of putting *459 them into that state in which the purchaser is to be hound to accept them, or as it is sometimes worded, into a deliverable state, the performance of those things shall, in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of the property:” Benj. on Sales, 221.
The correctness of this principle we do not propose to controvert, but we hold that the facts and the law do not justify the decree of the Chancellor in this case.
In the case of Gilmore v. Supple, Sir Cresswell Cresswell, in giving an elaborate judgment of the Privy Council, says: “By the law of England, by a contract for the sale of specific ascertained goods, the property immediately vests in the buyer, and a right to the price in the seller, unless it can be shown that such was not the intention of the parties.” And in the Calcutta Company v. DeMattes, Blackburn, Judge, pronounced this to be “a very accurate statement of the law:” Vid. Benj. on Sales, 219; 11 Moore, P. C., 566; 32 Law Journal, Q. B., 322, 328.
But in the case at bar, though the crop of cotton was sold as an entirety and in bulk, yet it is contended that it was not a sale of “specific ascertained goods,” as . both the quantity and the aggregate price had yet to be ascertained by the scales and by calculation. And in that view it is urged, that a mere claim of ownership on the part of the buyer, and a disclaimer thereof .on the part *460 of tlie seller, could not effect a change of title and of risk from seller to the buyer. This is a sound principle, and it has been repeatedly recognized in the adjudications of this Court on- like questions.
In the case of Williams v. Allen, 10 Hum., 337, that precise question came directly in judgment. In that case the plaintiff had bargained for a quantity of corn, in pens, on the banks of Cumberland river, at the price of one dollar per barrel. A part of the purchase money was paid. In this state of the contract, the corn was swept away and destroyed by a flood. It was held that the quantity of the corn not being ascertained, and the price not susceptible of calculation, the sale was not complete, and the loss was the loss of the bargainer. This case was decided upon the principle that where goods are sold by number, weight, or measure, so long as the specific quantity or measure is not separated and identified, the sale is not complete, and the goods are at the risk of the seller: Story on Cont., § 800. The contract may be complete and binding in other respects, but the property in the goods remains in the vendor, and they are at his risk, if any act is to be done by him before delivery either to distinguish the goods or ascertain the price: Chitty on Cont., 375. And though the subject matter of the contract be clearly ascertained, yet if the price cannot be calculated until the parties have weighed the . goods, no .property therein passes to the buyer till such act be done: Cliitty on Cont., 377. We adhere to this *461 doctrine of the common law, as applicable to the character of contracts referred to, in its general sense. But we do not understand it to countervail the ascertained and positive intention of the parties to the contract. It is stated as a general doctrine of the law of sales, and divers cases are cited as examples and illustrations of the doctrine'. Thus, where a country merchant sold his whole stock at cost and carriage, and • seven and one-half per cent, advance, and he and the purchaser begun to measure and invoice the goods, laying them by as they progressed; but, before they had finished, a thief broke into the store at night and stole some that were invoiced and laid away, and some that were not, it was held that such of the stolen goods as were not measured and invoiced remained the property of the seller; but the goods which were measured, invoiced, and laid aside, had become the property of the purchase!’, unless it was the intention of the parties that the goods should be weighed, to ascertain the carriage: Crawford v. Smith, 7 Dana, 59, 61. And so under a contract of sale, by which the vendee purchased and paid for a quantity of hay to be weighed out of a mow when he should see fit to move it, it was held that the property did not vest in the vendee, before any weighing, so as to enable him to maintain an action of trover for the hay purchased: Davis v. Hill, 3 N. Hamp., 382, et vid; Messer v. Wordman, 2 Foster, N. Hamp., 172. But it is held otherwise when it appears, that the parties intended that the sale should be complete *462 before the weighing or the measuring of the article sold: Riddle v. Varnum, 20 Pick, 280; Cushman v. Holyoke, 34 Maine, 289; Macomber v. Parker, 13 Pick., 183; Dennis v. Alexander, 3 Barr., 50; Farnum v. Perry, 4 Law Rep., 276. And in the latter case it is broadly held that when the whole quantity of an article is sold, the sale will be complete between the parties, although the article is to be weighed or measured in order to ascertain the quantity, and thereby fix the amount of the price paid: Ft vid. Cartland v. Morrison, 32 Maine, 190; Chitty on Cont., 9 Am. ed., 378-9, and notes. These authorities bring us back to the proposition of Judge Blackburn, as above stated,- that where, by the agreement, the vendor is to do anything to the goods for the purpose of putting them into that state in which the purchaser is to be bound to accept them, or as it is sometimes worded, into a deliverable state, the performance of those things shall, in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of the title. This, then, we conceive to be the better statement of the doctrine, subordinating, as it .does, the question of construction to the question of intention — which is, at last, the true and only honest principle for the interpretation of contracts and their enforcement alike.
But we rest this case upon other and different grounds. The complainant contracted to gin the crop of .cotton, and to bale it and leave it at the gin to be paid for and taken away by the defend *463 ant. This he has clone. He had in every particular complied with his part of the contract. The complainant’s agent had demanded of defendant the performance of Ms part of the contract. Assuming, then, that this bargain was not complete, so as to effect a change of title in the cotton, until it was ginned and weighed and thrown out at the gin to await the orders of the defendant, it was certainly complete, and the transmutation of title was perfect, from the moment that loas done. And under the circumstances no notice was necessary, the defendant having from time to time hauled cotton away under the contract, and having assumed control and direction of the operations of the gin, the circumstances will be held to fix him with notice. The case of Bush v. Barfield, 1 Col., 92, is somewhat similar to this in its facts, and is governed by like principles. It was a purchase of a whole crop, as this was, and to be delivered by the vendor at the gin of one Currie, and payment to be made at the gin weights. The quantity of cotton was enough to make seven bales, and after five bales had been made, an officer levied an execution upon them as the property of the vendor. It was held in that case, that the delivery of the cotton at the gin, when it was ginned and baled in compliance with the contract of the parties, left nothing more to be done by the vendor, and passed the title to the vendee. In that case, it was said the purchaser became owner by the contract of purchase as soon as the cotton, or *464 any part of it, was delivered at the gin and weighed. The ownership with all risks was instantly changed. And the court cites approvingly the doctrine, that where everything the seller has to do with the goods is complete, the contract of sale becomes .absolute, without actual payment or delivery, and the property and the risk of accident to it, vest in the buyer: 2 Kent, 492.
It results, therefore, that the defendant must be held liable upon his contract to pay for the entire crop of 1861, or so much thereof as was ginned and baled according to the contract, and received by defendant or his agent, or left at the gin subject to his orders — at the contract price in gold, or its equivalent in legal tender Treasury notes. The number of bales of cotton, and the weight thereof, as well as the relative value of gold coin and legal tender notes at the time of the breach of the contract, being ascertained in the proof of this cause, a decree will be entered here in conformity with this opinion. The costs of this court and the court below will be adjudged against the defendant.