IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 11, 2007 Session

## FOSTER BUSINESS PARK, LLC v. J & B INVESTMENTS, LLC, ET AL.

Appeal from the Chancery Court for Davidson County
No. 05-767-IV     Claudia Bonnyman, Chancellor

No. M2006-00913-COA-R3-CV - Filed January 30, 2008

The plaintiff, a debtor under a promissory note, brought this action against two defendants, the bank that issued a promissory note to the plaintiff and the holder of the note for charging and attempting to collect a rate of interest the plaintiff contends was usurious. In the Complaint, the plaintiff contends that two defendants engaged in unconscionable conduct under Tenn. Code Ann. § 47-14-117(c) and unfair and deceptive practices in violation of the Tennessee Consumer Protection Act. The bank's conduct at issue pertains to its issuance of a promissory note to Foster that contained a default rate of interest of 24%, which the plaintiff contends is usurious. The conduct of the other defendant, the holder of the note, pertains to its attempts to collect the default rate of interest. The Chancellor dismissed the plaintiff's complaint upon the defendants' Tenn. R. Civ. P. 12.02(6) motions to dismiss, concluding that the interest was not usurious, and therefore, the complaint failed to state a claim upon which relief could be granted. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which ROBERT S. BRANDT, SP. J., joined. WILLIAM B. CAIN, P.J., M.S., not participating.

Mathew R. Zenner and Donald Capparella, Nashville, Tennessee, for the appellant, Foster Business Park, LLC.

Sam J. McAllester, III, and William J. Haynes, III, for the appellee, J & B Investments, LLC.

Roger G. Jones and Austin L. McMullen, Nashville, Tennessee, for the appellee, The Bank of Nashville.

### OPINION

The plaintiff, Foster Business Park, LLC, filed this action on March 24, 2005, against The Bank of Nashville and J & B Investments, LLC. The claims pertain to a certain promissory note issued by The Bank of Nashville in 1997 that was subsequently assigned to J & B Investments in 2003 as the holder in due course. The matters at issue arise from a Construction and Term Loan Agreement ("Loan Agreement") between Foster Business Park ("Foster") and The Bank of Nashville

dated July 2, 1997. Pursuant to the Loan Agreement, The Bank of Nashville made a loan to Foster Business Park as evidenced by a Promissory Note ("Note") in a principal amount not to exceed $1,500,000.[1] The Note was secured by a Deed of Trust, a Security Agreement and Assignment of Rents and Leases, Fixture Filing, and three Guaranty Agreements. The Guaranty Agreements were executed by Tarun Surti, Lata Surti, and Arte Corporation, Inc. ("Guarantors"). The Guaranty Agreements obligated the Guarantors to satisfy the obligation under the Loan Agreement and Note in the event of default by Foster.

The scheduled maturity date of the Note was December 20, 2002; however, the holder of the Note had the right to accelerate the maturity date in the event of the existence or occurrence of any default. The pre-default, contractual rate of interest on the Note was 8.5 % per annum. In the event of default, the holder was entitled to recover interest on the principal owed at the default rate of 24% per annum. Foster defaulted on the note when it failed to pay the principal and interest due on September 20, 2002.

On March 24, 2003, after the default by Foster, The Bank of Nashville assigned the Note to American Holding Investments, Inc. Four months later, American Holdings assigned the Note to J & B Investments, LLC.

Foster never cured its default, and the Guarantors failed to cure the default. Thereafter, in May of 2003, in an effort to seek relief from its creditors, Foster filed a petition for Chapter 11 relief in the United States Bankruptcy Court. In July of 2003, following J & B's acquisition of the Note, J & B filed its Proof of Claim in the bankruptcy court seeking to recover the unpaid principal balance on the Note, plus accrued interest at the default rate of 24%. After Foster filed its first Plan of Reorganization, the bankruptcy judge advised the parties that it would apply Section 1124 of the Bankruptcy Code (11 U.S.C. § 524(e)), which allows the court to calculate a "claim amount" based on the original rate of interest instead of an elevated default rate, notwithstanding the contractual right of a creditor to accelerate the maturity date to invoke a higher rate for default. As a consequence of the court's decision to apply Section 1124, Foster filed an Amended Plan of Reorganization, which calculated Plaintiff's bankruptcy claim at the pre-default interest rate of 8.5% per annum and provided for "full payment" of the "Allowed Claim Amount." In pertinent part, the Amended Plan stated:

> [Plaintiff] shall be paid an amount sufficient to cure the default of the effective date of the plan, *by paying the principal balance of the obligation held by [Plaintiff] plus unpaid interest at the pre-default, contract interest rate of 8.5 percent per annum,* plus reasonable costs and attorney's fees. . . . This payment shall be in full satisfaction of the obligation owed to [Plaintiff]. (emphasis added)

Thereafter, on August 3, 2004, the bankruptcy court entered an order by which it approved the Chapter 11 Plan and set J & B's claim against Foster at $1,502,037.29. Foster satisfied the claim

---

[1] On January 16, 1998, and again on March 23, 2000, Foster executed a Change in Terms Agreement with respect to the Promissory Note.

of J & B when it presented its check of $1,502,037.29 on September 8, 2004. As a consequence, Foster was relieved of its indebtedness to J & B on the Note.

On July 25, 2003, while Foster's bankruptcy was pending, J & B pursued its remedies against the three Guarantors on the note by filing a civil action against the Guarantors in the Chancery Court for Davidson County. On March 25, 2004, the Chancellor awarded J & B summary judgment against the Guarantors ruling that J & B "shall have and recover a judgment against the [Guarantors] for the unpaid principal balance plus accrued and unpaid interest . . . ." Following the entry of a judgment for the deficiency owing on the Note, the Guarantors perfected an appeal to this court. In December of 2007, we affirmed the Chancery Court's ruling that the Guarantors were indebted to J & B for the deficiency owing on the Note. *See J & B Investments, LLC v. Tarun Surti, et al.*, No. M2006-00923-COA-R3-CV, 2007 WL 4562894, at *9 (Tenn. Ct. App. Dec. 27, 2007).

In this action, Foster contends the defendants engaged in unconscionable conduct under Tenn. Code Ann. § 47-14-117(c) and unfair and deceptive practices in violation of the Tennessee Consumer Protection Act. Foster's contention hinges on whether the default interest rate of 24% was usurious. The Bank of Nashville and J & B Investments filed motions to dismiss Foster's complaint in May of 2005, putting at issue whether it had asserted a claim upon which relief could be granted. Following a hearing on the motions, the Chancellor found the default rate of interest of 24% was not usurious, and that the Bank of Nashville "could charge the maximum interest rate of twenty-four percent (24%) in its loan agreements with Foster Business Park, the Plaintiff." The Chancellor also concluded that "the Plaintiff's claim under the Tennessee Consumer Protection Act is dependent upon a finding of usury and it too is dismissed for failing to state a claim." In accordance with these findings, the Chancellor ruled that Foster had failed to state a claim upon which relief could be granted and dismissed the case.

Foster appeals the dismissal of its claims contending the trial court erred "in finding that the Bank of Nashville, and thus J & B Investments, could legally charge a maximum interest rate of 24% in its loan agreements with Plaintiff, Foster Business Park, LLC."

## STANDARD OF REVIEW

The purpose of a Tenn. R. Civ. P. 12.02(6) motion to dismiss is to determine whether the pleadings state a claim upon which relief can be granted. A Rule 12 motion only challenges the legal sufficiency of the complaint. It does not challenge the strength of the plaintiff's proof. *See Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999). In reviewing a motion to dismiss, we must liberally construe the complaint, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. *See Pursell v. First American National Bank*, 937 S.W.2d 838, 840 (Tenn. 1996); *see also Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696-97 (Tenn. 2002). Thus, a complaint should not be dismissed for failure to state a claim *unless* it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. (emphasis added) *See Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Fuerst v. Methodist Hospital South*, 566 S.W.2d 847, 848 (Tenn. 1978). Making such a determination is a question of law. Our review of a trial court's

determinations on issues of law is *de novo*, with no presumption of correctness. *Frye v. Blue Ridge Neuroscience Center, P.C.*, 70 S.W.3d 710, 713 (Tenn. 2002); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

## ANALYSIS

Whether the default rate of interest set forth in the Note at issue was a lawful rate of interest or usurious was the focus of the court's analysis in the related case of *J & B Investments, LLC v. Tarun Surti, et al.*, 2007 WL 4562894, at *9 (hereinafter "*Surti*"). In *Surti* we decided that the interest rate charged by The Bank of Nashville in the Note issued to Foster was not usurious. *Id.* A brief summary of the relevant part of our analysis in *Surti* is set forth below.

The Loan Agreement executed by Foster and The Bank of Nashville in 1997 provided, in pertinent part:

> Section 1.3 <u>Interest, Commitment Fee.</u> The Borrower [Foster Business Park] shall pay interest on the outstanding principal balance of the loan at the rate(s) of interest specified in the Note. . . . After maturity, whether by acceleration or otherwise, accrued interest (a) shall be payable on demand and (b) shall accrue in the discretion of the Lender at a rate not to exceed the highest contract rate of interest permitted by law (24%).

Consistent with the Loan Agreement, the Note issued to Foster by The Bank of Nashville provided:

> After maturity, whether by acceleration or otherwise, interest shall be payable on demand and charged (at the discretion of the Payee) at an interest rate not to exceed the maximum contract rate of interest permitted by applicable law (24%) commencing from and after thirty (30) days from the date of such maturity.

The Bank of Nashville, at the time of the execution of the Note, was a state-chartered bank. Admittedly, Tenn. Code Ann. § 45-2-1106 places certain limitations on the rates of interest state-chartered banks may charge. *See* Tenn. Code Ann. § 45-2-1106. Plaintiff contends the only state financial institutions that are expressly authorized by statute to charge interest as high 24% are the industrial loan and thrift companies, citing Tenn. Code Ann. § 45-5-301,[2] and state that The Bank of Nashville is not an industrial loan and thrift company. As we stated in *Surti*, the "fallacy with the Guarantors' argument is that the statute they cite is not the only statute that pertains to the maximum rate of interest a state-chartered bank may charge." *Id*. at *8.

The Tennessee General Assembly enacted what is commonly known as the "wildcard statute" to afford state-chartered banks the ability to be more competitive in the financial market

---

[2]When the loan at issue was made, industrial loan and thrift company registrants were statutorily authorized to charge interest "[o]n loans where the total amount of the loan is one hundred dollars ($100) or more, at any rate not in excess of a maximum effective rate of twenty-four percent (24%) per annum. . . ." Tenn. Code Ann. § 45-5-301.

place. *See* Tenn. Code Ann. § 45-2-601. Pursuant to the wildcard statute, state-chartered banks may exercise the same powers that a national bank located in Tennessee could exercise. *Id.* The statute provides:

> any state bank may exercise any power or engage in any activity which it could exercise or engage in if it were a national bank located in Tennessee, subject to regulation by the commissioner for the purpose of maintaining the state bank's safety and soundness.

Tenn. Code Ann. § 45-2-601.[3] Moreover, state-chartered banks are expressly authorized to "make loans upon the same terms and at the maximum effective interest rates as loans are authorized and credit extended by national banks in this state," notwithstanding any provision to the contrary in the Tennessee Code. Tenn. Code Ann. § 45-2-1108.[4] Additionally, the United States Congress authorized national banks to charge interest at the rates allowed by the laws of the state in which the banks are located. *See* 12 U.S.C. § 85. In Tennessee, industrial loan and thrift companies may charge an interest of 24% per annum. *See* Tenn. Code Ann. § 45-5-301(2). Thus, as we concluded in *Surti*, The Bank of Nashville was authorized to charge interest at the default rate of 24% when the Note at issue was executed. *Id.* at *9. Accordingly, the default interest rate of 24% is not usurious.

Interest on negotiable and nonnegotiable instruments shall accrue according to the terms of the instrument. Tenn. Code Ann. § 47-14-109. Moreover, the lawful holder of a note is entitled to enforce the instrument. *Id.* at *9 (citing Tenn. Code Ann. § 47-3-301). As the lawful holder of the Note, J & B was entitled to collect interest at the default rate stated in the Note, which we determined was not usurious. We therefore affirm the Chancellor's decision.

In addition to deciding the issue on its merits, we have also concluded that Foster does not have standing to bring the claims at issue. This is because Foster's liability under the Note, including the applicable interest rate to be applied, was fully adjudicated through the bankruptcy proceedings. In that proceeding, Foster was held liable for the principal balance owing on the note plus interest at the original contract rate of interest of 8.5%. Foster did not pay interest at the default rate of interest, and therefore, it does not have standing to challenge the propriety of the default rate of interest.

---

[3] The legislative history of this provision indicates that the purpose of the wild card statute was to "preserve the competitive equality of state and national banks." Atty. Gen. Op. 04-04-059, 2004 WL 874924 at *6-7 (filed Apr. 7, 2004) (citing Leg. Hist. Senate Session Mar. 19, 1986 (Sen. Albright)).

[4] Tenn. Code Ann. § 45-2-1108, in pertinent part, provides:

> Notwithstanding any provision to the contrary in this chapter and chapter 1 of this title or elsewhere, state banks have the power to make loans upon the same terms and at the maximum effective interest rates as loans are authorized and credit extended by national banks in this state.

Standing is a judicial doctrine used to determine whether a party is entitled to judicial relief. *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson County*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992). It limits court access to those who have a justiciable claim. *Huntsville Util. Dist. of Scott County, Tenn. v. General Trust Co.*, 839 S.W.2d 397, 401 (Tenn. Ct. App. 1992); *see Alliance for Native Am. Indian Rights in Tennessee, Inc. v. Nicely*, 182 S.W.3d 333, 338 (Tenn. Ct. App. 2005) (stating that a case is not justiciable if it does not involve a genuine, continuing controversy requiring the adjudication of presently existing rights). The doctrine of standing is based on the concept that " [a] court may and properly should refuse to entertain an action at the [insistence] of one whose rights have not been invaded or infringed." *Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001) (quoting 59 Am. Jur.2d *Parties* § 30 (1987)).

To establish standing, a plaintiff must show: (1) that it has sustained a distinct and palpable injury, (2) that the injury was caused by the challenged conduct, and (3) that the injury is one that can be addressed by a remedy that the court is empowered to give. *City of Chattanooga v. Davis*, 54 S.W.3d 248, 280 (Tenn. 2001); *In re Youngblood*, 895 S.W.2d 322, 326 (Tenn. 1995); *Metro Air Research Testing Auth., Inc.*, 842 S.W.2d at 615.

The record before us fails to establish that Foster suffered a distinct and palpable injury as it relates to the default rate of interest. Thus, it does not have standing to state a claim as it relates to the default rate of interest.

In its Complaint, it also appears that Foster was attempting to bring a claim on behalf of the Guarantors. The Guarantors are not parties to this action; yet, Foster asserts a claim against J & B for attempting to collect a usurious rate of interest against Foster *and* the Guarantors. Foster has no standing to assert a claim on behalf of the Guarantors.

The primary focus of a standing inquiry is on the party, not on the merits of the claims. *Cox v. Shell Oil Co.,* 196 S.W.3d 747, 758 (Tenn. Ct. App. 2005) (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 484, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982); *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968)). Because a party's standing may hinge on the nature of its claims, a standing inquiry requires an "examination of the complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Id.* (citing *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984)). Based upon our examination of the allegations in Foster's complaint on behalf of the Guarantors, Foster has no standing to assert such a claim, or for that matter any claim, on behalf of the Guarantors.

In addition to its lack of standing, it is also apparent that the claim presented by Foster is no longer a justiciable claim. This is due to the fact the claim is moot. *See Nicely*, 182 S.W.3d at 338 -39. A case on appeal must remain justiciable through the entire course of litigation. *Id.* at 338 (citing *State v. Ely*, 48 S.W.3d 710, 716 n. 3 (Tenn. 2001); *Cashion v. Robertson*, 955 S.W.2d 60, 62-63 (Tenn. Ct. App. 1997)). "A case is not justiciable if it does not involve a genuine, continuing controversy requiring the adjudication of presently existing rights." *Nicely*, 182 S.W.2d at 338. A case is considered moot if "it no longer serves as a means to provide some sort of judicial relief to the prevailing party." *Id.*

A moot case is one that has lost its character as a present, live controversy. The central question in a mootness inquiry is whether changes in the circumstances existing at the beginning of the litigation have forestalled the need for meaningful relief. A case will generally be considered moot if it no longer serves as a means to provide relief to the prevailing party.

*McIntyre v. Traughber*,  884 S.W.2d 134, 137 (Tenn. Ct. App. 1994) (internal citations omitted).

Foster's claims may have been moot *ab initio*, but if not, the claims are certainly moot now. This is because Foster's liability under the Note was fully adjudicated when the Bankruptcy Court confirmed Foster's bankruptcy plan on August 3, 2004.  The Bankruptcy Court set the interest rate at 8.5%, not 24%, and even Foster admits in its Complaint that, pursuant to its Chapter 11 Bankruptcy Plan, it paid J & B $1,502,037.29 "which constituted the unpaid principle [sic], interest at the rate of 8.5%, plus attorney's fees and costs in full satisfaction of the debt."  Thus, Foster did not pay the default rate of interest, and the issue is moot.

### IN CONCLUSION

The judgment of the trial court is affirmed in all respects, and this matter is remanded with costs of appeal assessed against Appellant, Foster Business Park, LLC, and its surety for which execution may issue.

_____
FRANK G. CLEMENT, JR., JUDGE