IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 29, 2017 Session

## RUTHERFORD COUNTY, TENNESSEE v. DELINQUENT TAXPAYERS OF RUTHERFORD COUNTY, TENNESSEE, ET AL.

**Appeal from the Chancery Court for Rutherford County
No. 2011-RC-357, 11CV-498, 16CV-453     J. Mark Rogers, Judge**

_____

### No. M2016-01254-COA-R3-CV

_____

A purchaser bought real property at a delinquent tax sale in Rutherford County, Tennessee.  The delinquent taxpayer who owned the property at the time of the sale moved to redeem the property within one year of confirmation of the sale.  After moving to redeem the property, the delinquent taxpayer conveyed it to a third party.  The tax sale purchaser contested the redemption and, alternatively, requested reimbursement for expenses paid to preserve the value of the property during the redemption period.  The trial court confirmed the redemption, divested title from the tax sale purchaser, vested title in the third party, and found that the tax sale purchaser was only entitled to reimbursement for property taxes paid on the property.  The tax sale purchaser appealed. We affirm as modified.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Jonathan C. Stewart, Nashville, Tennessee, for the appellant, Thomas G. Hyde.

Eugene N. Bulso, Jr., and Paul Joseph Krog, Nashville, Tennessee, for the appellees, Terry Lounds and Barry Gregory.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Prior to 2013, Terry Lounds owned real property located at 159 Dalton Circle, Rockvale, Tennessee ("the Property").[1]  When Mr. Lounds failed to pay taxes assessed against the Property between 2008 and 2011, Rutherford County initiated this action to recover the delinquent property taxes.  The trial court entered a default judgment against Mr. Lounds on March 13, 2013, and Rutherford County sold the Property at a tax sale on June 20, 2013.  Thomas Hyde purchased the Property at the tax sale for $50,000, subject to a one-year right of redemption.  On July 17, 2013, the trial court entered a decree confirming the sale which, pursuant to Tenn. Code Ann. § 67-5-2702(a) (2013),[2] commenced the running of Mr. Lounds's one-year right of redemption.

At the time of the tax sale, the Property was vacant and in disrepair.  There were holes in the roof and numerous missing shingles.  The yard consisted of overgrown grass and shrubs with branches growing into the eaves of the house.  The inside of the house was in even worse condition.  As a result of the holes in the roof, water puddled at the base of the walls in some rooms and mold and mildew formed on sections of the drywall.  The house had been without electricity for approximately three years. There was no running water and some of the pipes had burst during a previous winter.

In July 2013, Mr. Hyde took possession of the Property and began making repairs and improvements.  He spent approximately $41,900 between July and October 2013 cleaning up and improving the property by (1) repairing the windows, (2) replacing the roof, (3) installing a new HVAC unit, (4) removing moldy drywall and rotten carpet, (5) installing new drywall and carpet, (6) painting, (7) installing new bathroom fixtures, and (8) affixing a new mailbox.  Thereafter, Mr. Hyde rented the Property to a tenant and collected $30,525 in rent.

On June 2, 2014, the trial court filed a letter from Mr. Lounds requesting that the letter "serve as a request for motion" to resolve the following issues:  receipt by Mr. Lounds of the excess proceeds from the sale of the Property, his waiver of the remainder of the redemption period, and his expressed intent not to reclaim the Property, but rather

---

[1] Mr. Lounds owned the Property with his wife, Fonda Lounds.  Mrs. Lounds died on August 30, 2000.

[2] We reference the version of the statute in effect at the time the trial court entered the decree confirming the sale was entered.  This section has since been amended.  Tennessee Code Annotated section 67-5-2702(a) (2013) provided, in pertinent part:

> Persons entitled to redeem property may do so by paying the moneys to the clerk . . . within one (1) year from the date of entry of the order of confirmation of sale, as evidenced by the records in the office of the clerk of the court responsible for the sale.

to quitclaim it to Mr. Hyde. The trial court scheduled the letter/motion for a hearing on June 24, 2014, but the hearing never occurred.

On June 23, 2014, Mr. Lounds filed a "Statement of Person Redeeming Property" along with payment of $19,002.87 for the delinquent taxes, penalties, and interest. That same day, Mr. Lounds recorded a quitclaim deed transferring his interest in the property to a third party, Barry Gregory. After receiving notice from the clerk and master that Mr. Lounds had redeemed the Property, Mr. Hyde filed a motion contesting the redemption and, alternatively, seeking to recover the funds he expended on the Property. On March 12, 2015, following a lengthy discovery period, Mr. Lounds and Mr. Gregory filed a response to Mr. Hyde's motion contending that the redemption was valid and that most of the expenses sought by Mr. Hyde were not compensable upon redemption because they constituted improvements rather than costs to preserve the value of the Property.

The trial court heard the matter without a jury on May 2, 3, and 10, 2016. On May 25, 2016, the trial court entered a decree confirming the redemption, finding that (1) Mr. Lounds properly redeemed the Property, (2) the title to the Property should be vested in Mr. Gregory pursuant to the quitclaim deed, (3) Mr. Hyde was entitled to reimbursement of $1,937 for property taxes he paid on the Property but no other expenses, and (4) neither Mr. Lounds nor Mr. Gregory was entitled to recover rents collected by Mr. Hyde during the redemption period. On May 31, 2016, Mr. Hyde accepted a check from the clerk and master's office in the amount of $57,200.22, which represented the taxes he paid on the Property during the redemption period ($1,937) and a return of the purchase price he paid at the tax sale ($50,000), plus interest at a rate of ten percent per annum. Thereafter, Mr. Hyde perfected this appeal.

## II. STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Church v. Church*, 346 S.W.3d 474, 481 (Tenn. Ct. App. 2010). Because a trial court is in a better position to observe a witness's demeanor as he or she testifies, a trial court is "accorded significant deference in resolving factual disputes when the credibility of the witnesses is of paramount importance." *Davis v. Davis*, 223 S.W.3d 233, 238 (Tenn. Ct. App. 2006) (citing *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)). When a trial court fails to make specific findings of fact, we "review the record to determine where the preponderance of the evidence lies" with no presumption of correctness. *State v. Delinquent Taxpayers*, No. M2004-00951-COA-R3-CV, 2006 WL 3147060, at *3 (Tenn. Ct. App. Nov. 2, 2006). Interpretation of the statutes governing the sale of property for delinquent taxes involves a question of law, which we review de novo with no presumption of correctness. *See In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009).

III. ANALYSIS

A. Waiver of Right to Appeal

As a preliminary matter, Mr. Lounds and Mr. Gregory contend that the appeal is moot because Mr. Hyde accepted payment of the sum awarded to him in the decree confirming the redemption. In response, Mr. Hyde asserts that the appeal is not moot because the only change in circumstance is that he lost in the trial court.[3] We believe the parties incorrectly frame the issue as a mootness inquiry. When a party accepts payment of a judgment and then appeals the judgment, Tennessee courts have considered the issue as being whether the party waived his or her right to appeal.

In *Bond v. Greenwald*, 51 Tenn. 453, 458 (1871), the trial court awarded a seller a judgment for $10,504.83 under a contract for the sale of cotton. After the trial court rendered its judgment, the seller appealed. *Bond*, 51 Tenn. at 465. The seller abandoned the appeal and received full payment of the judgment. *Id.* The seller then filed a writ of error challenging the amount of the judgment.[4] *Id.* The buyer argued that the seller waived his right to appeal because he accepted payment of the judgment. *Id.* at 467. Our Supreme Court rejected the argument, stating:

> We are unable to see how [the seller's] proceeding to enforce his decree can be held, as matter of law, to be a waiver of his right afterwards to exercise the right of resorting to the writ of error, to have his own decree reviewed and reversed. *He had indicated his dissatisfaction with its amount*, by praying an appeal. In applying for this writ of error, within the time prescribed by law, he was in the exercise of a right secured by law to either party. He took the chances of the result of his writ of error—if he should fail in the Supreme Court to obtain any decree at all, or one less than he obtained below, he would have been compelled to refund. If he succeeded in obtaining a larger decree, he would make the difference.

---

[3] A case is moot if it:

> "has lost its character as a present, live controversy. The central question in a mootness inquiry is whether changes in the circumstances existing at the beginning of the litigation have forestalled the need for meaningful relief. A case will generally be considered moot if it no longer serves as a means to provide relief to the prevailing party."

*Foster Bus. Park, LLC v. J & B Invs., LLC*, 269 S.W.3d 50, 57 (Tenn. Ct. App. 2008) (quoting *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994) (internal citations omitted)).

[4] A writ of error is defined as "[a] writ issued by an appellate court directing a lower court to deliver the record in the case for review." BLACK'S LAW DICTIONARY (10th ed. 2014).

*Id.* at 468-69 (emphasis added). Several cases have affirmed *Bond* in principle. *See Burcham v. Carbide & Carbon Chems. Corp.*, 221 S.W.2d 888, 889-90 (Tenn. 1949); *Peabody v. Fox Coal & Coke Co.*, 54 S.W. 128, 132 (Tenn. Ch. App. 1899); *Gaines v. Fagala*, 42 S.W. 462, 463 (Tenn. Ch. App. 1897).

One of the more recent cases that affirmed the principles of *Bond* is *McClendon v. House*, 637 S.W.2d 883 (Tenn. Ct. App. 1982). In *McClendon*, a jury awarded the plaintiff damages in the amount of $6,000 for injuries she sustained in an automobile accident. *McClendon*, 637 S.W.2d at 883. The plaintiff retrieved the funds deposited by the defendant with the court to satisfy the judgment and then appealed, challenging the sufficiency of the damages amount. *Id.* The defendant argued that the plaintiff waived her right to appeal because she accepted the benefits of the judgment. *Id.* We rejected this argument and adopted the following reasoning: "'[W]here a judgment is appealed *on the ground that the damages awarded are inadequate*, acceptance of payment of the amount of the unsatisfactory judgment does not, standing alone, amount to an accord and satisfaction of the entire claim.'" *Id.* at 884 (quoting *U.S. v. Hougham*, 364 U.S. 310, 312 (1960)) (emphasis added).

As the foregoing cases demonstrate, a party does not waive his or her right to appeal by accepting full payment of a judgment if the appeal challenges the amount of the damages awarded. In this case, Mr. Hyde accepted full payment of the funds awarded to him in the trial court's judgment confirming the redemption of the Property and then appealed. He argues that Mr. Lounds did not properly redeem the Property. This argument does not challenge the amount of the judgment and falls outside the rule established in *Bond* and *McClendon*. Mr. Hyde is challenging the basis of the judgment, which is he was entitled to the funds because Mr. Lounds properly redeemed the Property. We know of no Tennessee cases addressing whether a party waives his or her right to appeal the underlying legal theory of the judgment by accepting payment of the judgment. Guidance for this issue may be found from authorities other than Tennessee Courts. For instance, 36 C.J.S. *Federal Courts* § 426 provides, in pertinent part:

> A litigant may not accept all or a substantial part of the benefit of a judgment and subsequently challenge the unfavorable aspects of that judgment on appeal. A knowing acceptance operates as a waiver or release of errors and estops the party afterward from maintaining an appeal from the judgment when the effect of the appeal may be to annul the judgment as a whole. If the provisions of a judgment, order, or decree are mutually interdependent, so that the acceptance of benefits is inconsistent with the alleged invalidity in other portions, a party cannot take advantage of the favorable portion, and accept its benefits, and afterward prosecute an appeal to reverse the portions that are unfavorable.

- 5 -

The Sixth Circuit of the United States Court of Appeals addressed a similar issue in *Tech Hills II Associates v. Phoenix Home Life Mutual Insurance Co.*, 5 F.3d 963 (6th Cir. 1993). In that case, a real estate developer and a lender negotiated a deal to finance the development of a piece of real property that involved a mortgage loan and a sale/leaseback agreement. *Tech Hills II*, 5 F.3d at 964. The real estate developer executed a mortgage loan commitment and a sale/leaseback commitment before paying a commitment fee of $252,000 for the mortgage loan. *Id.* at 965. When the parties were unable to resolve their disagreements on the inclusion of warranties and representations in the purchase and sale agreement, the developer initiated a lawsuit asserting several claims, including breach of contract, and seeking a return of the commitment fee. *Id.* The trial court dismissed the breach of contract claims but awarded the developer its commitment fee based on unjust enrichment or failure of consideration. *Id.* Thereafter, the developer accepted full payment of the judgment and appealed the dismissal of its breach of contract claims. *Id.* at 966. The lender moved to dismiss the developer's appeal, arguing that the developer waived its right to appeal by accepting payment of the judgment. *Id.* at 966, 969. The Court of Appeals agreed, concluding that the developer's acceptance of payment of the judgment constituted acceptance of the judgment awarded under theories of unjust enrichment and lack of consideration. *Id.* at 966, 970. Thus, the Sixth Circuit found that the developer accepted the trial court's finding that there was no contract formed. *Id.* The Court, therefore, concluded that the developer was barred from pursuing an appeal based on breach of contract claims because that would be "inconsistent with the judgment" it accepted. *Id.*

In light of the foregoing principles, Mr. Hyde's acceptance of payment of the judgment constituted acceptance of the underlying legal theory. His pursuit of an appeal of the judgment under a theory that the Property was not properly redeemed is inconsistent with his acceptance of the judgment finding that Mr. Lounds properly redeemed the Property. Thus, we conclude that Mr. Hyde waived his right to appeal the validity of the redemption by accepting payment of the judgment.

On appeal, Mr. Hyde also seeks an additional amount for expenditures he made on the Property, an issue which falls within the rule established in *Bond* and *McClendon*. Thus, he did not waive his right to appeal to the extent he is challenging the amount of the judgment.

B. Expenditures

1. Writ of Possession

Mr. Hyde asserts that the trial court erred in denying him any compensation for the money he expended to preserve the value of the Property and to prevent waste on the basis that he did not obtain a writ of possession before incurring these expenses. Mr. Lounds and Mr. Gregory argue that the trial court should be affirmed because "the law

requires one seeking to enter into possession of any premises, even those owned by him and not actively occupied by another, to do so by judicial process and not via self-help."

In Tennessee, property owners who redeem real property that was sold to pay delinquent taxes are required to pay only those costs specified by statute. *Delinquent Taxpayers*, 2006 WL 3147060, at \*6. Tennessee Code Annotated section 67-5-2703 (2013) required a redemptioner to pay a tax sale purchaser "the amount paid for the delinquent taxes, interest and penalties, court costs and any court ordered charges, and interest at the rate of ten percent (10%) per annum computed from the date of the sale on the entire purchase price paid at the tax sale." The "court ordered charges" a redemptioner was required to pay included "any other lawful charges or moneys . . . expended to preserve the value of the property." Tenn. Code Ann. § 67-5-2704(a) (2013);[5] *Delinquent Taxpayers*, 2006 WL 3147060, at \*6. The phrase "preserve the value of the property" encompassed a tax sale purchaser's obligation to not commit "permissive waste," which is waste that "results from the failure of the possessor of property to exercise the reasonable care to preserve and protect the future estate or interest of another." *Delinquent Taxpayers*, 2006 WL 3147060, at \*7. Thus, the "court ordered charges" a redemptioner was required to pay to redeem property included reimbursing a tax sale purchaser for expenditures made to prevent permissive waste.

The trial court issued its ruling from the bench, which was incorporated by reference into its May 25, 2016 order, denying Mr. Hyde's request for reimbursement of his alleged maintenance and preservation expenses. The court explained as follows:

> After the sale the taxpayer -- I mean after the tax sale Mr. Hyde, under 67-5-2503, had a right to request a writ of possession. . . .
>
> Mr. Hyde did not do anything to secure a writ of possession. If Mr. Hyde had simply bought the property at the tax sale, under our legislative statutes and the law that applies, if he had bought the property from tax sale and done nothing, if the roof had fallen in, if the doors had collapsed, if he didn't dig up one shrub or cut the grass or do anything, the -- the taxpayer could not have held Mr. Hyde liable to him for any reason. He couldn't order him -- he couldn't come in and say you didn't -- you didn't do anything. He would have had no responsibility to him.
>
> Mr. Hyde, undertaking those things without a writ of possession, is no different than anyone else that would go and make improvements on property. He did so at his peril. It was not his property to improve or expend money on.

---

[5] Tennessee Code Annotated sections 67-5-2703 and -2704 were both repealed effective July 1, 2014. We apply them because they were in effect at the time the tax sale was confirmed.

Tennessee Code Annotated section 67-5-2503(b) provides tax sale purchasers a right to obtain a writ of possession. The statute states:

> A writ of possession shall, upon application, in a proper case, be ordered by the court in which the tax sale has been made. A purchaser not taking actual possession of the property shall have no rights to rents or profits from a taxpayer who has remained in possession during the redemption period.

Mr. Hyde argues that he was not required to obtain a writ of possession because the Property was vacant at the time of the tax sale.

To support their contention that Tenn. Code Ann. § 67-5-2503 required Mr. Hyde to obtain a writ of possession before entering into possession of the Property, Mr. Lounds and Mr. Gregory rely on the case *94th Aero Squadron of Memphis, Inc. v. Memphis-Shelby County Airport Authority*, 169 S.W.3d 627 (Tenn. Ct. App. 2004). The *94th Aero* case involved a commercial lease agreement that contained a provision providing the lessor a right of re-entry if the lessor cancelled or terminated the lease. *94th Aero*, 169 S.W.3d at 630-31. When the lessee's business proved unprofitable, the lessee vacated the premises and allowed it to fall into disrepair for approximately three years. *Id.* at 631. The lessee's rent was also in arrears. *Id.* Consequently, the lessor terminated the lease and exercised its right of re-entry by going onto the premises and placing a padlock on the gate without obtaining a writ of possession. *Id.* at 636.

The *94th Aero* court found that Tenn. Code Ann. § 29-18-101 created a right for a lessor to bring a forcible entry and detainer action to obtain a writ of possession in the event a lessee remains on the leased premises following termination of a lease. *Id.* at 636-37. Tennessee Code Annotated section 29-18-101 provides that "[n]o person shall enter upon any lands, tenements, or other possessions, and detain or hold the same, but where entry is given by law, and then only in a peaceable manner." The court construed the forcible entry and detainer statutes as requiring the lessor "to seek a writ of possession before reentering the premises." *Id.* at 638. The court also found that proceedings for forcible entry and detainer

> serve the function of preventing violence and breaches of the peace that result from the inherent friction caused by repossessing property through self-help. To avoid these conflicts, the party seeking to repossess the land must do so with the aid of a writ of possession issued by the court.

*Id.* at 637 (citations omitted).

The current case does not involve a lessor seeking to repossess a leased premises, but rather a tax sale purchaser seeking reimbursement for funds expended to preserve the

value of property. As such, the statutes governing tax sales apply, not the statutes governing forcible entry and detainer. Therefore, *94th Aero* is not determinative in the current case.

As mentioned above, the statutes governing the sale of property for delinquent taxes provide a tax sale purchaser with the right to obtain a writ of possession. Our current task is to ascertain whether the tax sale statutes require tax sale purchasers to obtain a writ of possession even if the property is vacant at the time of the tax sale. When construing statutes, our task is to "ascertain and give effect" to the Tennessee General Assembly's intent "'without unduly restricting or expanding'" the coverage of a statute beyond its intended scope. *Sallee v. Barrett*, 171 S.W.3d 822, 828 (Tenn. 2005) (quoting *Houghton v. Aramark Educ. Res.*, 90 S.W.3d 676, 678 (Tenn. 2002)). We look to the plain and ordinary meaning of the language used in order to derive the legislature's intent. *Id.* We must construe the words used "in the context in which they appear in the statute and in light of the statute's general purpose." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010).

If a statute's language is clear and unambiguous, we "need not look beyond the statute itself to ascertain its meaning." *Id.* at 527. When the language is ambiguous, we must consider the statute in its entirety and additional extrinsic sources to determine legislative intent. *Sallee*, 171 S.W.3d at 828; *Lee Med., Inc.*, 312 S.W.3d at 527. An ambiguity exists "when a statute is capable of conveying more than one meaning." *Najo Equip. Leasing, LLC v. Comm'r of Revenue*, 477 S.W.3d 763, 768 (Tenn. Ct. App. 2015).

The statutory language at issue in this case provides that a court shall issue a writ of possession "upon application of the purchaser, *in a proper case*." Tenn. Code Ann. § 67-5-2503(b) (emphasis added). The phrase "in a proper case" provides little guidance for determining when a tax sale purchaser is obligated to obtain a writ of possession. However, its meaning becomes clear when we consider the statute in its entirety. The second sentence of the statute provides that a tax sale purchaser who does not take actual possession has no right to "rents or profits from a taxpayer *who has remained in possession* during the redemption period." *Id.* (emphasis added). When both sentences are read together, we believe that "in a proper case" refers to a situation where the taxpayer continues to occupy property after it is sold at a tax sale. Thus, we conclude that Tenn. Code Ann. § 67-5-2503 obligates a tax sale purchaser to obtain a writ of possession before entering the property when the taxpayer continues to occupy the property. This interpretation is consistent with the function of a writ of possession: to prevent violence and breaches of the peace caused when a person uses self-help to gain possession of property occupied by another. *See 94th Aero*, 169 S.W.3d at 637.

At the time of the tax sale, the Property was not occupied by Mr. Lounds or anyone else. There was no risk of violence or a breach of the peace when Mr. Hyde took possession of the Property after receiving the clerk and master's deed. Thus, Mr. Hyde

was not required to seek a writ of possession before entering the Property. We conclude, therefore, that the trial court erred in denying Mr. Hyde reimbursement for expenses other than property taxes based on his failure to obtain a writ of possession before entering the Property and expending money on it.

Our analysis of this issue does not end here. We must still determine whether Mr. Hyde was entitled to reimbursement for his expenditures under Tenn. Code Ann. § 67-5-2704(a).

### 2. Compensability under Tenn. Code Ann. § 67-5-2704(a)

As discussed above, Tenn. Code Ann. §§ 67-5-2703 and 67-5-2704(a) required a redemptioner to reimburse a tax sale purchaser for funds expended to prevent permissive waste. What constitutes compensable work done to prevent permissive waste? Whether expenditures are compensable under Tenn. Code Ann. § 67-5-2704(a) depends on "the condition and use of the property at the time of the tax sale." *Delinquent Taxpayers*, 2006 WL 3147060, at *9. A tax sale purchaser must maintain the premises "in the same general condition that it was at the time of possession" and "keep the premises wind tight and air tight." *Id.* at *7-8. A tax sale purchaser must "stabilize a dilapidated structure to prevent further deterioration," but he or she is not obligated to renovate the structure. *Id.* at *8. Courts have considered the following as permissive waste: "the failure to make roof repairs, the failure to replace a furnace to prevent damages from freezing, the failure to paint the exterior of a structure, and the failure to replace or maintain gutters." *Id.* (footnotes omitted). A tax sale purchaser is not entitled to reimbursement for funds expended on work that goes beyond what is necessary to maintain and preserve a property. *Id.* Expenditures that enhance or upgrade a property constitute improvements and are not subject to reimbursement under the statute. *Id.*

The trial court made no specific findings of fact regarding whether Mr. Hyde was entitled to reimbursement of his expenses under Tenn. Code Ann. § 67-5-2704(a). Consequently, we will examine the record and determine where the preponderance of the evidence lies. *Delinquent Taxpayers*, 2006 WL 3147060, at *3. As the party seeking reimbursement, Mr. Hyde bears the burden of proof. *See id.* at *9. Mr. Hyde may recover all or some of his expenses spent on the Property if he proved any of the following: 1) that Mr. Lounds "agreed to pay for the work," 2) that Mr. Lounds "was aware of the work but did nothing to stop it," or 3) that his "various expenditures are compensable under Tenn. Code Ann. § 67-5-2704(a)." *Id.* The record contains no evidence pertaining to the first two methods of proof. The record does, however, include evidence pertaining to the compensability of Mr. Hyde's expenses under Tenn. Code Ann. § 67-5-2704(a).

At trial, Mr. Hyde testified that, after taking possession of the Property, he installed a new roof, replaced moldy carpet, removed moldy drywall and installed new

drywall, painted the interior walls, installed new bathroom fixtures, reconnected electricity to the house, installed a new HVAC unit, and replaced the mailbox. According to Mr. Hyde, these expenditures were necessary "to preserve the property and prevent waste."

As we discussed above, the condition and use of the Property at the time the tax sale occurred determines whether particular expenditures are compensable under Tenn. Code Ann. § 67-5-2704(a). Mr. Hyde testified that the Property was in a state of disrepair and appeared abandoned when he purchased it at the tax sale. Specifically, Mr. Hyde testified that numerous shingles were missing from the roof and water had puddled in some of the rooms due to holes in the roof. He further testified that he found mold and mildew on the carpet and some of the interior walls. According to Mr. Hyde, there was no running water in the house and some of the pipes had burst. He further testified that the house had no electricity for approximately three years. In addition to having no electricity, Mr. Hyde stated, the HVAC unit no longer worked, which contributed to the broken pipes, mold, and mildew. He testified that the yard was in poor condition: bushes were so overgrown that "branches had grown up into the eaves of the house" and the grass had not been mowed in some time. During cross-examination, Mr. Hyde admitted that one of his goals in performing all the work on the Property was to put it in a condition that he would allow him to rent it to a tenant.

Mr. Hyde's testimony indicates that the Property was dilapidated and uninhabitable when he purchased it at the tax sale. Mr. Hyde's duty to refrain from committing permissive waste obligated him to make the Property "wind tight and air tight" and to stabilize the house in order to prevent additional deterioration. *Delinquent Taxpayers*, 2006 WL 3147060, at *8. However, he had no obligation to renovate the Property so as to make the uninhabitable house habitable. *Id.* at *8-9. In light of the condition of the Property at the time of the tax sale, the expenses paid to install new carpet and drywall, paint the interior walls, install new bathroom fixtures, reconnect electricity, and replace the mailbox constituted work that went beyond the maintenance and preservation necessary to stabilize the dilapidated property. As such, those expenses constituted improvements and are not compensable under the tax sale statutes.

With regard to the expenses spent on installation of a new HVAC unit, a tax sale purchaser has an obligation to replace a heating unit to prevent damage that could be caused by frozen pipes. *Id.* at *9. However, when Mr. Hyde purchased the Property, it already had burst pipes from a previous winter—so the damage had already been done. A new HVAC unit was not necessary to prevent further damage, especially considering that the house had no electricity or running water. Installation of a new HVAC unit merely assisted in making the Property livable so Mr. Hyde could rent it to a tenant. We have previously held that "installing a new central heat and air conditioning system to make an uninhabitable house livable would not be compensable in the absence of evidence that the new system was required to prevent further deterioration of the house."

*Id.* at *9. We, therefore, conclude that Mr. Hyde is not entitled to reimbursement under Tenn. Code Ann. § 67-5-2704(a) for his expenses incurred to install a new HVAC unit.

The work performed to remove moldy carpet and drywall may be compensable as work necessary to prevent further deterioration. However, our thorough examination of the record reveals that Mr. Hyde failed to prove how much he spent on these expenditures. For instance, Mr. Hyde testified that he paid $812 for "carpet work" at the Property, but he failed to clarify if that was the amount spent on removal of the moldy carpet only or if it included payment for installation of the new carpet. With regard to removal of the moldy drywall, Mr. Hyde did not identify the amount spent. Mr. Hyde read into evidence sixty-one different amounts spent on the Property totaling approximately $41,000, but he failed to indicate the work that the individual expenses covered. Thus, we conclude that he failed to meet his burden of proof with regard to these expenses.

At trial, the parties focused on the compensability of the expenses incurred to install a new roof on the Property. A tax sale purchaser prevents waste and preserves a property's value by replacing a leaking roof. *Id.* at *9. If it is possible to repair an existing roof, however, a tax sale purchaser is not entitled to reimbursement for money paid to install a new roof. *See id.*

Mr. Hyde testified that the roof needed to be replaced because it had several holes and many of the shingles were missing. The record contains photographs of the Property taken in June 2013 that lend support to Mr. Hyde's testimony. These photographs clearly depict numerous missing shingles and two large areas of exposed wood. Mr. Hyde introduced into evidence a spreadsheet of expenses that he prepared. According to the spreadsheet, he spent $11,137.00 on the installation of the new roof.

Mr. Lounds and Mr. Gregory argued that the new roof constituted an improvement. To support this argument, they introduced the testimony of Darrell McEachron, who testified as an expert in general contracting. Mr. McEachron opined that it was not necessary to install a new roof because Mr. Hyde could have made the Property wind tight and air tight by installing a tarp.

Mr. Hyde introduced the testimony of Donald Borgeson to rebut the testimony of Mr. McEachron. Mr. Borgeson testified that he was the general contractor who installed the new roof on the Property. He stated that he could not recall if there were holes in the roof but he did know "that there was a lot of hail damage . . . ." He further testified that "there were active leaks pretty much throughout the house." According to Mr. Borgeson, it was impossible to repair the old roof, and a tarp only served as a "temporary fix." He admitted that he charged Mr. Hyde "over $11,000 for the roof."

In light of the foregoing, we conclude that Mr. Hyde is entitled to reimbursement for his expenses incurred to install a new roof in the amount of $11,137.00.

## C. Rents

Mr. Lounds and Mr. Gregory argue that the trial court erred in allowing Mr. Hyde to retain the rents collected during the redemption period because Mr. Hyde did not obtain a writ of possession. As discussed above, Mr. Hyde was not required to obtain a writ of possession before occupying the Property under the facts of this case. Mr. Lounds and Mr. Gregory argue alternatively that the trial court erred in failing to order Mr. Hyde to relinquish the rents he collected during the redemption period because Tennessee law requires purchasers of land from forced sales to "account for rents if the property is subsequently redeemed."

Mr. Gregory cites Tenn. Code Ann. § 66-8-112 in support of his argument. This statute pertains to real property sold to satisfy a debt and provides that "if the purchaser or the purchaser's assignee takes possession under the purchase, upon redemption by the debtor, the debtor shall have a credit for the fair rent of the premises during the time they were in the purchaser's possession." Tenn. Code Ann. § 66-8-112. Mr. Gregory argues that in *Shelton v. Sears*, 57 Tenn. 303, 307 (Tenn. 1872), the Tennessee Supreme Court interpreted this statutory language to require a purchaser to account for rents upon redemption by the debtor. Mr. Gregory correctly states our Supreme Court's interpretation of Tenn. Code Ann. § 66-8-112. However, we respectfully disagree that Tenn. Code Ann. § 66-8-112 applies to the facts of this case.

Prior to June 4, 1991, Title 66, Chapter 8 of the Tennessee Code applied to property sold to pay a tax debt. *State v. Delinquent Taxpayers*, No. W2008-01296-COA-R3-CV, 2009 WL 1211332, at *6 (Tenn. Ct. App. May 5, 2009). The Tennessee General Assembly determined that this chapter would no longer apply to property sold for taxes. *See* 1991 TENN. PUB. ACTS Ch. 470 § 4. The 1991 Act added Title 67, Chapter 5, part 27 to the Tennessee Code and provided that "'[t]he provisions of this act shall apply to all sales of real property for delinquent taxes held on or after the effective date of this act.'" *Delinquent Taxpayers*, 2009 WL 1211332, at *6 (quoting 1991 TENN. PUB. ACTS Ch. 470 § 5). Thus, Title 67, Chapter 5 applies to the facts of this case rather than Title 66, Chapter 8.

The 1991 Act also amended Tenn. Code Ann. § 67-5-2503(b) by adding the following language pertaining to a tax sale purchaser's right to rents: "A purchaser not taking actual possession of the property *shall have no right to rents or profits from a taxpayer who has remained in possession* during the redemption period." *See* 1991 TENN. PUB. ACTS Ch. 470 § 2 (emphasis added). In this case, Mr. Lounds did not remain in possession during the redemption period, and Mr. Hyde did not collect rent from Mr. Lounds. Instead, he collected rent from a third party. Tennessee Code Annotated section

67-5-2503(b) contains no language prohibiting a tax sale purchaser from collecting rents from a third party during the redemption period. Moreover, unlike Title 66, Chapter 8, Title 67, Chapter 5 contains no language providing a redeeming taxpayer a credit for the fair rent of the property during the redemption period. We, therefore, conclude that the trial court did not err in allowing Mr. Hyde to retain the rents he collected during the redemption period.


## IV. CONCLUSION

The judgment of the trial court is affirmed, as modified herein. This case is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal shall be taxed to the appellant, Thomas Hyde, and execution may issue if necessary.


_____
ANDY D. BENNETT, JUDGE